PIERCE FORDYCE OIL ASS'N v. WOOD-RUM. (No. 8299.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 8, 1916. On Appellee's Motion for Rehearing, Feb. 19, 1916. On Appellee's Second Motion for Rehearing, March 25, 1916. On Appellant's Motion for Rehearing, June 3, 1916.)

1. MINES AND MINERALS ⬦�longrightarrow55(6), 74—OIL AND GAS CONTRACTS—NATURE OF INSTRUMENT—LIABILITY OF ASSIGNEE.

Where an instrument relating to oil and gas rights amounts to a conveyance of an interest in the fee subject to defeasance by condition subsequent, an assignee who did not specially agree to assume the burdens therein contained would not be bound; but, where the instrument is a mere lease contract, the assignee who accepts the assignment of the rights and privileges under the lease would be burdened with the obligations and covenants running with the land.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 156, 163, 164, 202; Dec. Dig. ⬦�longrightarrow55(6), 74.]

On Appellee's Motion for Rehearing.

2. MINES AND MINERALS ⬦�longrightarrow55(6)—CONSTRUCTION AND OPERATION—COVENANTS RUNNING WITH LAND.

In a conveyance of oil and gas in place under certain land, a reservation of title to one-eighth of the gas and oil is a covenant running with the land.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 156, 163, 164; Dec. Dig. ⬦�longrightarrow55(6).]

On Appellee's Second Motion for Rehearing.

3. MINES AND MINERALS ⬦�longrightarrow74 — OIL AND GAS CONTRACT—NATURE OF INSTRUMENT — LIABILITY OF ASSIGNEE.

An instrument whereby the lessor grants, sells, conveys, and leases unto the lessees all the oil and gas in and under certain land for one

year and as much longer as oil or gas is found in paying quantities, for which the lessees agree to deliver one-eighth part to the lessor and to begin operations for drilling of a well within six months, or to pay 50 cents per acre in advance for one six months' extension of the time for beginning operations, providing that all covenants between the parties shall extend to their assigns, is governed by the law relating to leases, and assignees of the lessees are liable to the lessor, where the operations for digging wells were not commenced within six months, for the 50 cents per acre.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. ⚖=74.]

**4. MINES AND MINERALS ⚖=58—OIL AND GAS CONTRACTS—UNILATERAL CONTRACT.**

A conveyance and lease of all the oil and gas in and under certain land for one year and as much longer as oil or gas is found in paying quantities, for which lessees pay $1 an acre and agree to deliver to the lessor one-eighth of the oil or gas found and to begin operations for drilling a well within six months, or to pay 50 cents per acre in advance for one six months' extension of the time for beginning operations, is not void as being unilateral.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169; Dec. Dig. ⚖=58.]

*On Appellant's Motion for Rehearing.*

**5. COURTS ⚖=247(5) — APPELLATE JURISDICTION—CERTIFICATION OF QUESTIONS.**

Where the judges of the Court of Civil Appeals all fully concur in the opinion and are satisfied that its conclusions are correct, the questions at issue will not be certified to the Supreme Court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ⚖=247(5); Appeal and Error, Cent. Dig. § 1773.]

Appeal from Wichita County Court; Harvey Harris, Judge.

Action by F. W. Woodrum against the Pierce Fordyce Oil Association. From a judgment for plaintiff, defendant appeals. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for appellant. Carrigan, Montgomery & Brittain, of Wichita Falls, for appellee.

BUCK, J. Suit was brought by appellee, as plaintiff, against appellant, as defendant, filed January 21, 1915, to recover the sum of $509.50 with interest, from January 8, 1914, alleged to be one-half of the six months' rental due by virtue of an oil and gas lease contract entered into between plaintiff and J. E. Head and W. M. Snyder, on January 8, 1914. An undivided one-half interest in said lease had been transferred by the said Snyder on January 15, 1914, to one L. S. Kempher, and by Kempher transferred on March 6, 1914, to H. Clay Pierce, trustee for defendant. It was sought to hold defendant liable as the assignee of said lease. Defendant answered by general demurrer, and by denying certain paragraphs of the plaintiff's petition, and specially answered that the contract on which plaintiff sought to recover was unilateral and void, and that it had not assumed any obligations under said contract, or agreed to become liable for the debts or obligations mentioned in said contract, and that it was not in any way liable on the same because said contract was within the statute of frauds, and the defendant had made no agreement or obligation to answer for the default of the said Head or Snyder. The case was tried before the court without the aid of a jury, and judgment rendered for plaintiff in the amount sued for, to wit, $509.50, from which judgment the defendant appeals. Findings of fact and conclusions of law filed by the court.

The contract entered into by and between F. W. Woodrum, party of the first part, and J. E. Head and W. M. Snyder, parties of the second part, is as follows, omitting parts purely formal and the description of the lands involved, amounting to 2,038 acres, the rights covering one-half of which were later assigned by Snyder to Kempher and by the latter to the trustee acting for the appellant, said contract being signed by parties thereto and duly acknowledged by Woodrum:

"That the lessor, in consideration of the sum of one dollar to him in hand paid by the lessees, the receipt of which is hereby acknowledged, as well as in consideration of the covenants and agreements hereinafter contained on the part of the lessees, does hereby grant, sell, convey and lease unto the said lessees all the oil and gas in and under the following described tracts of land, and the possession thereof for the purpose of entering upon and operating thereon and removing therefrom said oil and gas, with the right to use sufficient water, gas and oil from the premises to operate said property; with the right of ingress and egress at all times for such purposes, and all rights and privileges necessary for such operations. Also the right to remove at any time all property pipes and improvements placed thereon or erected in or upon said land by the lessees, and also the right of subdividing or transferring all or any part of the rights hereinafter conveyed and the premises hereinafter described. * * *

"To have and to hold the same for the term of one year from this date and as much longer thereafter as oil or gas is found thereon and produced therefrom in paying quantities.

"The lessees agreed to deliver to the lessor in tanks or pipe lines, free of charge, one-eighth (⅛) part of all the oil produced and saved from said land. If gas is found in paying quantities, the lessees agree to pay the lessor therefor one-eighth (⅛) of all the net profits which may be derived from the sale of gas while the same is being sold off of said premises.

"If gas is found in paying quantities the lessor shall have, free of cost, sufficient gas to light and heat one dwelling house upon said land, the same to be taken at the well and at the lessor's risk and expense, and provided there is sufficient production of gas on said premises over and above the amount necessary for the operation of said premises.

"The lessees agree to place all pipe lines below plow depth whenever requested by the lessor, and to pay lessor for all damages done to growing crops while said property is being operated.

"Lessees agree to begin operations for the drilling of a well upon the above-described premises within six months from the date hereof, or thereafter to pay to the lessor the sum of fifty cent per acre for one six months' extension of the time for beginning such operations, said payment to be made in advance, and such payment to be made six months from this date, unless

operations for a well have been begun at said time. Said payment to be accepted as a rental and complete remuneration to lessor for a delay of six months in beginning said operations.

"The lessees agree that if oil or gas is found in paying quantities in the first well bored on this lease, that they will then begin operations for drilling a second well on said land within sixty days after the completion of the first well.

"The lessees further agree that in the event that oil is produced in quantities of one hundred (100) barrels per day or more for ten consecutive days from either of the wells above referred to after the completion of the same, that then the said lessees will pay to the lessor an additional amount in cash of ten thousand dollars ($10,-000), payable from twenty per cent. of the net production of oil from said land as the same is sold, such payments to continue until the full amount of ten thousand dollars is paid, and such payments shall not affect the right of the lessor to his one-eighth interest of the oil produced.

"It is further agreed that in the event any well drilled by the lessees on the above-described land should prove to be valuable as a water well and not produce oil or gas in paying quantities, then the lessor shall have the right to have said well and to use the same for water purposes by paying to the lessees a reasonable secondhand price for the casing in said well.

"If the lessees shall fail in any material way to comply with the terms of this lease, then the same shall at once be terminated at the option of the lessor.

"The above-described premises are situated in what is known as a territory which has been undeveloped for oil or gas, therefore, it is thoroughly understood that the sum of money above provided for as a rental shall be accepted in lieu of developments, and no forfeiture will be claimed under this lease until the end of the term hereof, unless there is a failure upon the part of the lessee to pay said rentals as above stipulated.

"In consideration of the money paid at the delivery hereof, lessee acquires and has the right and option to surrender this grant at any time upon the payment of one dollar, and all amounts then due hereunder, and thereafter be released and discharged from all payments, obligations and covenants herein contained, whereupon this grant shall become null and void; or to continue the same in full force and effect by making the stipulated payments which lessor hereby binds himself to accept when tendered.

"In the event lessees surrendered this lease as above provided, they hereby bind themselves to surrender to lessor a deed of surrender of this lease, duly authenticated for record, and the depositing in the post office of said deed of surrender and a check for one dollar, payable to the lessor and all amounts then due hereunder, together with the notice of such surrender, shall be accepted as a full and legal surrender of this grant, and shall terminate this lease and all obligations hereunder.

"Post office address of lessor is Seymour, Texas.

"All convenants and agreements herein set forth between the parties hereto shall extend to their respective heirs, legal representatives and assigns."

In the transfer of his one-half interest in the rights and privileges conveyed under the original instrument to Kempher, said Snyder was joined by his wife, and the acknowledgments of Kempher, Head, and Mrs. Snyder were taken, and it was specially provided in said assignment or conveyance that:

"All covenants and agreements herein set forth between the parties hereto shall extend to their respective heirs, legal representatives and assigns."

The transfer of date March 6, 1914, from Kempher to H. Clay Pierce, trustee, was duly signed and acknowledged by Kempher, and, omitting formal parts, is as follows:

"That for and in consideration of the sum of two thousand dollars ($2,000.00) to me in hand paid, the receipt whereof is hereby acknowledged, and for other and more valuable consideration, receipt whereof is also acknowledged, I have this day sold, assigned, transferred and delivered, and do by these presents sell, assign, transfer and deliver to H. Clay Pierce, trustee, all of my right, title and interest in all of the oil and gas lands covered by and described in the contract entered into between myself and W. H. Snyder and Lorena Snyder, his wife, and J. E. Head, executed on the 15th day of January 1914, the original of which is hereto attached and made a part of this indenture, together with all of my right, title and interest in the said contract, and in witness whereof I have hereto set my hand on the day and year first above written."

It was agreed by counsel representing both parties that in the last mentioned and quoted transfer, H. Clay Pierce, trustee, was acting as trustee for the appellant, and that a one-half interest in said oil and gas lease belongs to appellant by virtue of said transfer.

"It was further admitted upon the trial that no operations for the drilling of a well on the land described in the plaintiff's petition and in the oil and gas lease had ever been begun, and that neither the lessees nor their assigns had ever paid the plaintiff anything, or offered to pay him anything, for the six months' extension provided for in the contract, and that the said ground had not been surrendered, and [defendant] had made no offer to surrender same, and that no deed of surrender had been executed, and that the one dollar provided for in the lease in order to surrender same had not been paid."

Appellant, by its three assignments, raises really but two questions:

First. That the court erred in failing to sustain defendant's general demurrer because, as stated in its proposition under the first assignment:

"Where a vendor who sells the oil and gas in place in certain land sues the assignee of the purchaser of said oil and gas in and under said land for specific performance of the purchaser's contract, agreeing to drill a well on the land within a certain time, or, in the alternative, to pay the vendor a certain sum of money, and the petition fails to allege that the assignee agreed to perform the terms and stipulations of the purchaser's contract and assume the obligations thereof, it fails to state a cause of action against the defendant assignee."

It is claimed under the contract set out that it was intended to be a conveyance of a part of the land, the estate in fee, and that a subsequent vendee who did not specially assume the convenants and obligations recited in the original instrument of conveyance would not be bound thereby, but would only take title subject thereto.

Second. That the contract is unilateral, and therefore void, inasmuch, as stated in the proposition under the second assignment:

"Where the consideration paid for an oil and gas lease is one dollar and an agreement to drill for oil or pay a stipulated sum in lieu of development, and the lease provides that the lessee may, by the payment at any time to the lessor of a nominal sum, be released of all payments, obligations, and covenants contained therein, in the absence of development, such contract

is unilateral and void for want of mutuality, and terminable at the will of either party."

[1] Of course, if either question raised should be decided favorably to the appellant; the judgment of the trial court must be reversed and, as the evidence seems to have been fully developed, here rendered for appellant. Therefore we will direct our attention, first, to the question as to whether, by the terms of the contract, and instrument of conveyance between Woodrum of the first part and Head and Snyder of the second part, there was intended to be, and was in fact, a conveyance of an interest in the fee subject to defeasance by a condition subsequent, in which case an assignee who did not specially agree to assume the burdens and obligations therein contained would not be bound. If it should be held to be a mere lease contract, then the assignee who accepted the assignment of the rights and privileges granted under the lease would be burdened with the obligations and covenants running with the land.

This question is one concerning which there is some contrariety of opinion, and even in our own state there seems to be ample authority to sustain the conclusion that a contract of this nature is not a conveyance of title to any part of the real estate, but a mere rental contract. But in the case of Texas Company v. Daugherty (Sup.) 176 S. W. 717, a suit was brought by the appellant company to enjoin the tax collector and others of Wichita county from enforcing the collection of county and state taxes, which had been assessed against the company upon certain oil leases which said company held in said county, and the Supreme Court, in a very exhaustive opinion by present Chief Justice Phillips, held that a similar lease was not intended as a mere franchise or rental contract, but as a conveyance of the property and privileges mentioned, and was a present grant of title in fee in the oil and gas in the ground. In this opinion the authorities, both in this state and in other jurisdictions, are collected and collated, including some of the cases by the Supreme Court, as well as those by the Courts of Civil Appeals, which have been understood by the profession as holding that oil and gas in place are not susceptible of grant, and the conveyance creates no property interest in the land, but only a bare right or privilege to go on the land and mine for such minerals and reduce them to possession. In the course of the opinion, Judge Phillips uses the following language:

"A fee may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition, and here, if any property was conveyed, there was a present grant but liable to be defeated by the grantee's failure to perform the requirement in respect to beginning operations for the drilling of a well for oil or gas, or, in lieu thereof, making the quarterly payment provided. The grant amounted to a defeasible title in fee to the oil and gas in the ground, if oil and gas in place are capable of ownership and conveyance.

"This brings us to the consideration of the latter question, and the contention of the plaintiff in error that these substances are incapable of ownership as property until severed or extracted from the ground, and that therefore these instruments conferred upon it no more than a mere use of the surface of the ground and the right to take them from it, amounting only to a privilege belonging to the land and taxable as a part of it against the owner of the fee, but vesting it with the title to no property whatever. * * * It is no longer doubted that oil and gas within the ground are minerals. They have peculiar attributes not common to other minerals because of their fugitive nature or vagrant habit—the disposition to wander or percolate, and the possibility of their escape from beneath one part of the surface of the earth to another. Nevertheless, they are to be classed as minerals" (citing a number of cases). "In place, they lie within the strata of the earth, and necessarily are a part of the realty. Being a part of the realty while in place, it would seem to logically follow that, whenever they are conveyed while in that condition or possessing that status, a conveyance of an interest in the realty results. It is generally conceded that, for the purpose of ownership and conveyance of solid minerals, the earth may be divided horizontally as well as vertically, and that title to the surface may rest in one person and title to the strata beneath the surface containing such minerals in another. Because of the fugitive nature of oil and gas, some courts, emphasizing the doctrine that they are incapable of absolute ownership until captured and reduced to possession and analogizing their ownership to that of things feræ naturæ, have made a distinction between their conveyance while in place and that of other minerals, holding that it created no interest in the realty. But it is difficult to perceive a substantial ground for the distinction. A purchaser of them within the ground assumes the hazard of their absence through the possibility of their escape from beneath the particular tract of land, and, of course, if they are not discovered, the conveyance is of no effect, just as the purchaser of solid mineral within the ground incurs the risk of its absence, and therefore a futile venture. But let it be supposed that they have not escaped, and are in repose within the strata beneath the particular tract and capable of possession by appropriation from it. There they clearly constitute a part of the realty. Is the possibility of their escape to render them while in place incapable of conveyance, or is their ownership while in that condition, with the exclusive right to take them from the land, anything less than ownership of an interest in the land? Conceding that they are fluent in their nature and may depart from the land before brought into absolute possession, will it be denied that, so long as they have not departed, they are a part of the land? Or when conveyed in their natural state, and they are in fact beneath the particular tract, that their grant amounts to an interest in the land? The opposing argument is founded entirely upon their peculiar property, and therefore the risk of their escape. But how does that possibility alter the character of the property interest which they constitute while in place beneath the land? The argument ignores the equal possibility of their presence, and that the parties have contracted upon the latter assumption; that, if they are in place beneath the tract, they are essentially a part of the realty, and their grant, therefore, while in that condition, if effectual at all, is a grant of an interest in the realty. In other words, the question, it

seems to us, reduces itself to this: If the oil and gas, the subject of the conveyance, are in fact not beneath or within the land, and are therefore not capable of being reduced to possession, the conveyance is of no effect. But, if they have not departed and are beneath it, they are there as a part of the realty; and their conveyance while in place, if the instrument be given any effect, is consequently the conveyance of an interest in the realty."

In the recent case of Guffey v. Smith et al., 237 U. S. 120, 35 Sup. Ct. 532, 59 L. Ed. 866, involving the construction of a lease very similar to the one under consideration, Mr. Justice Van Devanter of the United States Supreme Court says:

"It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease, like that of the complainants, passes to the lessee, his heirs and assigns, a present vested right— 'a freehold interest'—in the premises; that this interest is taxable as real property" (citing a number of authorities).

Therefore, restraining the temptation to go more into detail and to present some of the leading authorities pro and con, we will content ourselves with stating that it seems from these two cases, both of commanding authority, that a lease contract, using terms similar or to the effect of those used in the instant case, conveys a title in fee of a freehold interest in the land. If we are correct in this conclusion, it follows that the assignee who has not assumed any of the obligations or covenants of the original instrument or conveyance is not bound thereby, and that the judgment of the trial court holding the appellant so bound must be reversed.

If we are correct in our conclusion as to the first question raised, it becomes unnecessary for us to pass upon the issue as to whether or not the contract presented is unilateral and void. We are cited by appellant, among other authorities, to the case of Owens et al. v. Corsicana Petroleum Co., by the Amarillo court, 169 S. W. 192, holding that a contract almost identical in verbiage was unilateral in its nature. While we recognize the ability with which Justice Hall of that court has discussed the questions involved in the cited case in his opinion, yet the authority of the conclusion reached is somewhat weakened by the fact that the Supreme Court has granted a writ of error, with the following notation:

"Granted; we are of the opinion that the holding that the lease contract was void because unilateral was erroneous. It appears to have been supported by a valuable consideration paid, though it be regarded as a contract for an option and as unilateral in character. A contract to give an option is valid if supported by an independent consideration. We think it questionable, however, whether a contract by which the opposite party agrees to do a definite thing within a limited period, or in lieu of it, to pay a specified amount, can be regarded as unilateral."

It would seem from this notation that the Supreme Court seriously questioned the correctness of the ruling of the Court of Civil Appeals for the Seventh District on the question now under consideration. In line with the apparent trend of opinion of our own Supreme Court may be cited the case of Pittsburg Vitrified Pav. & Bldg. Brick Co. v. Bailey, by the Kansas Supreme Court, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745, and other cases in 6 Ruling Case Law, p. 687, § 94, under note 5. The text above cited uses this language:

"An option, supported by a consideration, furnishes another illustration of a contract which is valid notwithstanding the lack of mutuality. It is no objection to the validity of the contract that the holder of the option is under no obligation to exercise it."

In the Kansas case, supra, the court, in holding that a contract very similar in terms to the one under discussion was not subject to the vice of lacking in mutuality says:

"It is urged there is no mutuality in this contract, that it is unilateral. It is well said in 9 Cyc. 334: 'Where there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option and the other has not; or, in other words, because it is obligatory on one and optional on the other. So want of mutuality cannot be set up as a defense by the party who has received the benefit simply because it was left optional with the other as to whether he would enforce his right.' See Pennsylvania Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289. Under the conditions of the contract, as construed and acted upon by the parties thereto, the company paid $1 and became obligated to pay $40 per annum rental from the day of its execution until such time as they should complete a well or surrender the lease. It exercised its option by paying the rent for two successive years and the lessors acquiesced in the partial performance of the contract by accepting. The lessors will not, therefore, be heard to say, when the three years' rent is tendered, that the contract is unilateral and revocable by them because the company might have then exercised its option to surrender the lease. The consideration is not only valuable, but it is adequate. Although this decision is not based thereon, the writer is of the opinion that the $1 consideration, admitted to have been received, in the absence of fraud or bad faith, is sufficient to sustain this contract. Supporting a contract almost identical in this respect with the one here, it is held in Allegheny Oil Co. v. Snyder, 106 Fed. 764 [45 C. C. A. 604], that the lease constitutes an entire contract, and that the consideration recited, being $1, supports not only the grant of the two years' term, but, as well, the privilege of extending the time for drilling by paying the stipulated price therefor. To much the same effect, see Gas Co. v. Eckert, 70 Ohio St. 127, 71 N. E. 281; Bouvier's Dictionary, 406; 6 Am. Encyc. of Law, 694; 696.'"

Further, it might be noted with effect that in the instant case neither the original grantees nor their subsequent assignees have elected to exercise their right of cancellation, nor have they performed, or offered to perform, the three things which it was specified they should perform in the event of cancellation, to wit, the payment of all accrued rental, payment of $1, and the execution and delivery of a surrender deed. Therefore it can hardly be said with justice that the grantee under the lease was not bound to comply with the agreements to sink a well and otherwise develop the land for oil and gas, but had the right at any time to cancel the obligation and to exercise a right of rescission.

For in the exercise of such right he must comply with the stipulations above mentioned.

But we do not deem it necessary to decide the question as to whether the contract under consideration was void because unilateral, though, for the reasons and upon the authorities mentioned, we are inclined to the opinion that it is not, and do not here decide the same, but we base our judgment upon the first question discussed, to wit, that the instrument in question constituted and evidenced a conveyance of an interest in realty, and that the assignee who has not assumed the obligations and covenants therein contained does not become bound thereby.

For the reasons given, the judgment of the trial court is hereby reversed, and judgment is here rendered for appellant.

DUNKLIN, J., disqualified and not sitting.

### On Appellee's Motion for Rehearing.

BUCK, J. [2] In appellee's motion for rehearing, the earnest contention is made that the agreement on the part of the original lessee to pay the sum of 50 cents per acre for the six months' extension of the time for beginning operations is a "covenant running with the land," and that therefore the assignee, appellant, would be liable therefor, even though the instrument conveyed in part the fee, and even though the assignee did not by apt words so bind himself. We do not understand the law upon this question to be so decided in this state. In G., C. & S. F. Ry. Co. v. Smith, 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281, when the remote vendee of certain land adjoining the railway company's right of way sought to enforce a stipulation in the deed from his remote grantor to the railway, to the effect that, under certain conditions, the railway company should keep its right of way under lawful fence, etc., it is said:

"There has been much discussion in the cases turning upon this point 'concerning express covenants and covenants in law, and which covenants run with the land and which of them are collateral and do not go with the land, and when the assignee shall be bound, without naming him, and where not.' In Spencer's Case, 3 Coke, 31, which is recognized as the leading authority upon this subject, the rule is said to be: 'That when the covenant extends to a thing in esse part of the demise, the thing to be done by force of the covenant is annexed and appurtenant to the thing demised, and shall go with the land and bind the assignee though he is not bound by express words; but when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant * * * to the thing that has no being.' If the covenant be to erect or set up a new house and the like, it will not bind the assignees unless they be named in the covenant. * * * Those covenants which are held to run with the land and inure to the benefit of the assignee are such as generally affected the land itself and conferred a benefit on the grantor."

This holding was approved in Ft. Wayne, etc., Ry. Co. v. Board of Commissioners, 24 Ind. App. 519, 57 N. E. 148, and in Ruddick v. Railway, 116 Mo. 30, 22 S. W. 500, 38 Am. St. Rep. 570. In the last-cited case the Supreme Court of Missouri says:

"Upon the execution by plaintiff of the deeds, the title to the strip of land embraced therein vested in the grantees, subject to be defeated by failure on their parts to comply with the conditions expressed in the deeds; that is, to furnish in the one case a pass to plaintiff, and in the other to plaintiff's wife and family. Upon condition broken, and entry for reason thereof, the title would revert to and become reinstated in plaintiff. * * * Plaintiff misconceived his cause of action, which occurs to us is either an action against the original grantees in the deeds for damages for failure to furnish the passes, as held in the case of Helton v. Railway Co., 25 Mo. App. 322, * * * or ejectment for condition broken, which would entitle him to rent for the use of the roadbed from the time of such entry."

In Eddy v. Hinnant, 82 Tex. 354, 18 S. W. 562, our Supreme Court, speaking through Justice Gaines, discussed the question now under consideration. This was a case where appellee was suing for damages for an ejection from appellant's train, and predicated his claim that appellant was liable upon the contention that the receivers of the Missouri, Kansas & Texas Railway Company, as assignees or vendees of the East Line Railway Company, were liable under a contract between the East Line Railway Company and appellee, whereby the railway company, in consideration of the conveyance of a right of way, had covenanted to issue to appellee a pass over its line. The court said:

"But in order to show a right of action in the present case, it was necessary for the plaintiff to prove, not only that the Missouri, Kansas & Texas Railway Company bought the East Line Railway Company, but also that it assumed the obligation of the East Line Railway Company, or at least promised to perform the particular contract upon which the action in this case is based. If A. sell B. a tract of land upon which a vendor's lien exists in favor of C., the land may be subjected to the payment of the debt; but B. is not liable upon the contract for the purchase money, unless in his contract with A. he has assumed to pay it; nor would any recognition of the promise of A. to pay C. the purchase money, or any part payment upon it make him liable personally upon it."

In the cases cited by appellee in his motion, in so far as we have found time to examine them, we failed to discover any announcement in conflict with this holding by the Supreme Court, or that made in our original opinion. In the case of Ruhnke v. Aubert, 58 Or. 6, 113 Pac. 38, by the Supreme Court of Oregon, the covenant held to run with the land concerned a water right which the court held was an easement, and carved a new estate out of that granted, operating as a regrant or reconveyance of the estate reserved, and that the subsequent grantee took the larger estate with notice of this right of use or enjoyment.

In Ford v. Oregon Elec. R. Co., 60 Or. 278, 117 Pac. 809, 36 L. R. A. (N. S.) 358, Ann. Cas. 1914A, 280, also by the Oregon court, it was held that a subsequent vendee could

not enforce a stipulation contained in the deed of his grantor to the defendant railway company, conveying a right of way, to the effect that said railway company would stop its train at a point near the grantor's residence, the decision being based upon the principles of public policy. There are expressions in the opinion to the effect that, were it not for the consideration of the question of public policy, the court would be inclined to hold that the covenant would be enforceable. Pretermitting the consideration that these expressions are in the nature of dicta, and therefore are not judicial pronouncements, we are still confronted with the fact that in this case the compliance with the terms of the covenant would directly enhance the value of the land and affect its use and enjoyment, and therefore the dicta, even when construed as applied to the recited facts, cannot be said to be in conflict with the holdings in the cases to which reference has heretofore been made.

Appellee reminds us that this question is one of great importance in this state, and urges that:

"Under the construction of this lease contract by this court, all any person desiring to secure oil leases has to do to escape liability is to secure a dummy and take the contract in the name of such dummy, and then have such dummy transfer the same to the real owner, and, if this is done, under the decisions of this court the real owner gets all the benefits of the contract without any of the burdens or obligations thereof whatever."

We fully realize the growing importance in this state of questions and judicial constructions affecting gas and oil leases, but we do not apprehend such dire results from what we believe to be merely a restatement of the law as it has been in existence and recognized by our courts for many years. Nothing in this opinion, we think, will justify the conclusion that we have held that the appellant could drill for oil or gas on this land, and, having found either or both, could extract the same without being liable to appellee for his one-eighth part, in the way of a royalty. Upon appellant's failure to account therefor, appellee could successfully bring a suit for a cancellation of the contract for breach, and for the recovery of his property of the oil or gas used by appellant, for the reservation of title to one-eighth of the gas and oil is, indeed, a "covenant running with the land." He now has the right to cancel the lease, because of the breach; that is, the failure to pay the sum of money stipulated as a consideration for the extension of the rights conveyed to the original grantee under the terms of the conveyance. Further, such original grantee would be liable primarily for said sum. But we do not think because of a noncompliance by the grantee or his assignee with the agreement of the former to drill within the specified time, plaintiff could recover from the assignee a sum of money which said assignee has not obligated itself to pay.

The motion for rehearing is overruled.

DUNKLIN, J., recused as before.

## On Appellee's Second Motion for Rehearing.

BUCK, J. Appellee has filed his motion asking leave to file his second motion for rehearing, and, upon consideration we have concluded that such leave should be granted, and it is so ordered.

[3] A careful re-examination of this case in the light of the authorities cited in appellee's second motion for rehearing has convinced us that we erred in our written conclusions heretofore filed, in so far as we held that appellant, as assignee, was not bound on the covenants in the lease involved in this suit. Originally we proceeded upon the theory that inasmuch as our Supreme Court had held, in Texas Co. v. Daugherty, 176 S. W. 717, that instruments of the character here under consideration must be construed as present grants of the title in fee to an interest in land, the rules applicable to a subvendee claiming title to land under an absolute conveyance should be applied. Proceeding upon this theory, we held that the assignee in the present case, not having assumed the covenants contained in the contract, would not be bound thereby. As illustration: In the case of Eddy v. Hinnant, 82 Tex. 354, 18 S. W. 562, it was held that a subsequent vendee, who had taken conveyance of land without assuming to pay part of the purchase price due the original vendor, would not be liable personally therefor, though the land would be subject to the debt secured by the vendor's lien. But on reconsideration, and a re-reading of all of the authorities cited by appellee in his motions, as well as many others, we have concluded that our deductions were not required by the Daugherty Case, for while, under that decision, the instrument under consideration partakes of the nature of the ordinary deed to land, in that an interest in land is thereby conveyed, yet, considered in its entirety, it more nearly and largely bears the characteristics of a lease, and, as such, perhaps should be properly subject to the construction given in the authorities to lease contracts. This being true, as we now think, there can be no doubt, under the decisions cited in appellee's motions for rehearing, that appellant, as assignee of the lease in question, before breach of its covenants, is liable upon the covenant to pay rent. This conclusion is strengthened by the fact that in the Daugherty Case the decisions of the appellate courts of Pennsylvania, Ohio, Illinois, etc., are cited to support the conclusion of our Supreme Court that the instrument therein discussed did convey in part a title in fee, and yet the courts of last resort

in the states mentioned hold that the covenants in lease contracts, such as this, for the payment of rent, run with the land and become binding upon an assignee, even without an express assumption of obligation, to the extent that such assignee is liable for rents accruing during the period in which he holds title. See Edmonds v. Mounsey, 15 Ind. App. 399, 44 N. E. 196; Watson Coal Co. v. Casteel, 73 Ind. 296; McDowell v. Hendrix, 67 Ind. 513; Bonetti v. Treat, 91 Cal. 223, 27 Pac. 612, 14 L. R. A. 151; Fennell v. Guffey, 139 Pa. 341, 20 Atl. 1048; Bradford Oil Co. v. Blair, 113 Pa. 83, 4 Atl. 218, 57 Am. Rep. 442; Washington Gas Co. v. Johnson, 123 Pa. 576, 16 Atl. 799, 10 Am. St. Rep. 553; Williams v. Short, 155 Pa. 480, 26 Atl. 662; Comegys v. Russell, 175 Pa. 166, 34 Atl. 657; Aderhold v. Oil Well Supply Co., 158 Pa. 401, 28 Atl. 22; Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62; Consolidated Coal Co. v. Peers, 39 Ill. App. 453; Id., 150 Ill. 344, 37 N. E. 937.

It perhaps is not unworthy of note, as persuasive of the correctness of our present conclusion, that the lease in question in express terms makes its provisions applicable to an assignee such as appellant, though under the general trend of authorities such a provision would not be of any binding effect upon the assignee or grantee under a deed of conveyance. As said in 39 Cyc. 1671:

"It is well settled that the promise of a purchaser of land to take title or pay purchase money cannot be enforced against his assignee, either in an action for specific performance, or in an action for damages, unless there is an agreement to that effect on his part, even though the contract provides that the stipulations or covenants are to bind the heirs, personal representatives, and assigns of the parties; but the land remains liable for the purchase money and the vendor may call upon the assignee to pay the price or surrender the land, or have it sold to satisfy the debt."

But as we have finally concluded that the rules applicable to lease contracts, and not to conveyances of land, should apply here, the announcement contained in the above quotation does not affect or dispose of the questions raised in appellant's brief.

[4] We still retain the view expressed in our original opinion on the question of whether the lease contract was unilateral, and, for the reason therein stated, we now hold that said contract is not unilateral.

These being the only two questions raised in appellant's brief, it follows that appellee's second motion for rehearing should be granted, and the former judgment herein rendered set aside, and all assignments of error presented in appellant's brief be overruled, and the judgment of the trial court be in all things affirmed.

## On Appellant's Motion for Rehearing.

McLEAN, Special Judge. The original opinion rendered in this case by the Chief Justice and Associate Justice BUCK, the latter having written said opinion, and the opinions of said two judges on the motions for rehearing submitted by appellee, show that Associate Justice DUNKLIN, being disqualified to sit in the case, did not participate in the hearing and decision therein. After the decision reversing the judgment of the court below and rendering judgment for appellant, as contained in the original opinion of the court, and after overruling the first motion of appellee for rehearing, the court—Chief Justice CONNER and Associate Justice BUCK (Justice DUNKLIN not sitting)—sustained a second motion for rehearing made by appellee and affirmed the judgment of the court below. Thereupon appellant filed its motion for rehearing, praying that the judgment sustaining appellee's second motion for rehearing be set aside, and that the court adhere to the original opinion reversing the judgment of the court below and rendering judgment for appellant. After the filing of appellant's motion for rehearing the disqualification of Justice DUNKLIN to sit in the case was certified to the Governor, with the request that a special judge be appointed to sit in the case in place of Justice DUNKLIN. In compliance with said request the Governor commissioned W. P. McLEAN, Sr., a practicing attorney in this court, to act as the special judge in this case. He has qualified as such special judge, and we now have under consideration appellant's motion for rehearing. Appellant has incorporated in his motion for rehearing a request that, in case the court shall not grant said motion, the case be certified to the Supreme Court, praying for a decision of that court upon the questions raised by appellant in his motion.

We adhere to the decision rendered by the court on the second motion for rehearing submitted by appellee, and, without dissent among ourselves, concur in the conclusion reached in that decision, that the instrument executed by appellant's assignors and appellee on the 8th day of January, 1914, was a contract of lease of the lands described in said instrument for the uses and purposes therein stated, and that by its terms and under the facts adduced in evidence on the trial of the case the contract was terminated one year from the date of its execution, and, further, that appellant, having purchased and having become the assignee of said contract and the rights thereby conferred before the expiration of six months from the date thereof, became liable and bound to perform the covenants contained in said contract. In construing the contract, it is necessary and proper to take into consideration the whole instrument and weigh every part of the same, in order that a correct conclusion may be reached as to the intent of the parties thereto. An important provision of the contract, and one that

throws light upon the intention of the contracting parties, reads as follows:

"The above-described premises are situated in what is known as a territory which has been undeveloped for oil or gas, therefore it is thoroughly understood that the sum of money above provided for as rental shall be accepted in lieu of developments, and no forfeiture will be claimed under this lease until the end of the term thereof, unless there is a failure upon the part of the lessee to pay said rentals as above stipulated."

The end of the term, as set forth in a prior part of the contract, is defined in the following language:

"To have and to hold the same for a term of one year from this date and as much longer thereafter as oil or gas is found thereon and produced therefrom in paying quantities."

This language comes after the description of the tracts of land covered by the contract. The undisputed evidence shows that no oil or gas had been discovered or produced from the land at the end of the period of one year from the date of the contract, and also shows that nothing had been done by appellant in the way of boring for oil or gas or any preparations whatever for any kind of work provided for in the contract. The "rental" referred to in said paragraph of the contract hereinabove first set forth is stated in another paragraph of the contract, which reads as follows:

"Lessees agree to begin operations for the drilling of a well upon the above-described premises within six months from the date hereof, or thereafter to pay to the lessor the sum of fifty cents per acre for one six months' extension of the time for beginning such operations, said payment to be made in advance, and such payment to be made six months from this date, unless operations for a well have been begun at said time. Said payment to be accepted as a rental and complete remuneration to lessor for a delay of six months in beginning said operations."

The undisputed evidence is that no work whatever had been commenced or done at the expiration of the six months from the date of the contract. The undisputed evidence also shows that appellant became the purchaser of the contractual rights of the original grantees or lessees on the 6th day of March, 1914; that being some time before the expiration of six months from the date of the contract. It is admitted by appellant in its motion for rehearing that appellant became liable to the payment of the rental provided for in the contract, if the instrument was intended as a lease, and not as a fee-simple conveyance of an interest in land.

Appellant lays much stress upon the words of the granting clause, as well as the habendum clause, contained in the contract, insisting that the words of that clause, taken in connection with the final paragraph of the contract, have the conclusive effect of conveying absolute title to real estate, and that therefore the covenants as to the payment of rent did not bind appellant, in the absence of an express contract by him assuming that liability. The concluding words of the contract above referred to are as follows:

"All covenants and agreements herein set forth between the parties hereto shall extend to their respective heirs, legal representatives, and assigns."

The words of the granting clause are:

"Do hereby grant, sell, convey, and lease unto the said lessees all the oil and gas in and under the following described tracts of land and the possession thereof for the purpose of entering upon and operating thereon and removing therefrom said oil and gas," etc.

The habendum clause limits the contract to a period of 12 months from its date unless oil or gas or both shall have been found in paying quantities at that time. Now it will be observed that, in addition to the words "grant, sell, and convey," contained in the granting clause, the word "lease" is also used in connection with said other words, and undoubtedly was intended to qualify and limit them, which intention the contract as an entirety plainly shows.

As to whether oil or gas underlay the lands described in the contract, and whether or not the same would be developed, was a purely speculative and problematical idea in the minds of the contracting parties at the time the contract was made. The use of the lands was granted for 12 months to enable the grantees or lessees to explore them and otherwise use them in the work of making wells and other structures in the search for oil and gas. The contract plainly provides that it shall terminate within 12 months, and all rights thereunder become extinct, unless oil or gas in paying quantities shall have been produced by that time. That was the limit, under the plain language of the contract, in which the lessees or grantees were allowed to hold and use the lands of appellee in carrying out the contract. No oil or gas had been found at the termination of the contractual period, and no effort had been made to ascertain whether or not oil or gas underlay the lands which were the subject of the contract. After the expiration of that period, we hold that under the undisputed evidence the grantees and lessees under said contract had no rights by virtue of the same to the lands which appellee had granted them the use of for the purpose of developing oil or gas.

The contract is fully set out in the original opinion of the court, and we do not deem it necessary to incumber this opinion with its repetition. We have quoted such parts as we deem necessary to explain our reasons for the conclusion we have reached. The appellee subjected his land to a servitude for the promotion of appellant's purposes in a search for oil and gas, and it was entirely reasonable and just that in consideration of his parting with that much interest in his land there should have been a compensation paid him in case the grantees or lessees failed to make use of the property as contemplated in the contract, and the contract pro-

vides that in case no work had been commenced at the expiration of six months from the date of the contract a rental shall be paid of 50 cents per acre to cover the remaining six months of the 12 months provided as the limit of the term of the contract.

We therefore hold that the contract which is the subject of this suit was a lease of the lands described in the contract to the original lessees and their assigns for a period of 12 months, to be by them used in the exploration for oil and gas in the lands, and if at the end of 12 months no oil or gas in paying quantities was found the leasehold estate terminated, and appellant as the assignee of the original lease became bound for the payment of the rental provided for in the contract.

We do not understand that appellant complains of the former ruling of the court that the contract is not void as being unilateral. The court has heretofore overruled appellant's contention in that respect, and we still adhere to that ruling.

We therefore overrule appellant's motion for rehearing, and, as held in the opinion granting the second motion of appellee for rehearing, the judgment of the lower court is affirmed.

[5] As to appellant's request that the case be certified to the Supreme Court on the questions of the construction of the contract, and also as to the contract being void for want of mutuality, we appreciate the fact that the Supreme Court has no jurisdiction of appeal by writ of error in this case; but we all fully concur in the opinion that our conclusions in this case are correct, and that we do not deem it advisable to certify the questions at issue to the Supreme Court. Cleaver v. Duke, 58 S. W. 145.

We therefore overrule appellant's application to certify the questions at issue to the Supreme Court.

Judgment of the lower court affirmed.