### HALFF CO. v. WAUGH. (No. 7007.)*

(Court of Civil Appeals of Texas. Galveston. Jan. 31, 1916. Rehearing Denied Feb. 17, 1916.)

1. SALES &#x2250;467—CONDITIONAL SALES—COMPLIANCE WITH CONDITIONS—POSSESSION OF PURCHASER.

An agreement by which plaintiff put a motor truck in defendant's hands to use, title to remain in plaintiff, defendant to keep and render weekly an account of use, gross income, and operating expenses all in excess of a certain sum to be retained by defendant for operating expenses, to be divided equally, the part coming to plaintiff to be applied on the purchase price of the truck, provided the contract was carried out till the truck was paid for, with provision that, if it should not be paid out, such sums as should be paid to plaintiff should be considered as rent for the use, defendant to have the privilege, however, at any time, of paying out in cash the difference between what plaintiff had received in rent and the purchase price, he in such event to have a 5 per cent. discount on the balance, gave defendant right of possession of the truck till it was paid for, so long as he complied strictly with its terms.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1354, 1358–1364; Dec. Dig. &#x2250;467.]

2. CONTRACTS &#x2250;10—VALIDITY—MUTUALITY—OPTION.

Defendant having accepted possession of a motor truck for use, and in all things performed his part of the contract giving him right of possession for use so long as he gave plaintiff half of the net income from its use, to be applied on the purchase price, its want of mutuality, in that it did not bind defendant to make payments, does not render it unenforceable in his behalf.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. &#x2250;10.]

3. APPEAL AND ERROR &#x2250;742—ASSIGNMENTS OF ERROR—GERMANE PROPOSITION.

The proposition that it was the duty of the court to construe the contract is not germane to an assignment of error complaining only of the overruling of a general demurrer to the answer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. &#x2250;742.]

4. APPEAL AND ERROR &#x2250;1062 — HARMLESS ERROR—SUBMISSION TO JURY.

The jury having rightly construed a contract, error in submitting its construction to

---

&#x2250;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

them, when the court should have construed it, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ⊙➡1062.]

5. SEQUESTRATION ⊙➡5—GROUNDS—FEAR OF INJURY—"INJURE."

Inevitable decrease in the sale price of a motor truck from its use in the ordinary manner, which the parties must have contemplated when plaintiff put it in defendant's possession to use, so long as he paid to plaintiff half of the net income from its use, is not injury, within Rev. St. 1911, art. 7094, authorizing sequestration of personal property, title, or possession of which is sued for, if defendant fears defendant will "injure" it.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. § 4; Dec. Dig. ⊙➡5.]

6. MALICIOUS PROSECUTION ⊙➡71—MALICE—SEQUESTRATION—EVIDENCE.

Evidence held sufficient to warrant submission of the issue of malice in suing out a writ of sequestration.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 160–167; Dec. Dig. ⊙➡71.]

7. SET-OFF AND COUNTERCLAIM ⊙➡44 — ACTION AGAINST PARTNER — CROSS-ACTION BY DEFENDANT—DAMAGES TO PARTNERSHIP.

Where action is brought against an individual involving a contract executed between plaintiff and such individual, plaintiff may not assert as against right of recovery by defendant on his cross-action in his individual capacity that the damages sued for by defendant, though arising entirely out of breach of the contract, were suffered by a partnership, the members of which, other than defendant, were not parties to the suit; especially where there is no proof that the contract had been assigned to the partnership, though the article contracted for was used in its business.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 82–96, 98, 99; Dec. Dig. ⊙➡44.]

8. SEQUESTRATION ⊙➡21—WRONGFUL SEQUESTRATION—DAMAGES—EVIDENCE.

Evidence held sufficient to sustain a verdict of $1,500 for actual damages for wrongful sequestration of a motor truck during a period of ten months.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊙➡21.]

9. SEQUESTRATION ⊙➡21—WRONGFUL SUING OUT—EXEMPLARY DAMAGES.

A verdict for $2,000 for exemplary damages, the amount of which is largely in the discretion of juries, for wrongful sequestration of a motor truck, where the actual damages were $1,500, is not so large or disproportionate to the actual damages that the jury can be said to have been actuated by an improper motive.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ⊙➡21.]

10. APPEAL AND ERROR ⊙➡1040 — HARMLESS ERROR—RULING ON PLEADINGS.

Overruling exceptions to a pleading of a certain item of damage was harmless, where the item was not submitted to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ⊙➡1040.]

11. APPEAL AND ERROR ⊙➡1052 — HARMLESS ERROR—RULING ON EVIDENCE.

Overruling objection to evidence of certain items of damages was not prejudicial, where the items were not submitted to the jury, and the only possible effect of the evidence would be to increase the exemplary damages, and the award therefor was not excessive, even if such evidence should not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. ⊙➡1052.]

Appeal from District Court, Harris County.

Action by the Hawkins-Halff Company against T. L. Waugh. Pending suit, plaintiff changed its corporate name to the Halff Company. Judgment for defendant on his cross-action, and plaintiff appeals. Affirmed.

Sam Schwartz and Terrell, Walthall & Terrell, all of Houston, for appellant. A. M. John and Hutcheson & Hutcheson, all of Houston, for appellee.

McMEANS, J. The Hawkins-Halff Company, a corporation, being the owner of a 1½-ton Mack motor truck, delivered the possession thereof to the appellee, T. L. Waugh, under a written contract which is as follows:

"Houston, Texas, October 25, 1912.

"Mr. T. L. Waugh, City—Dear Sir: Following up our conversation in regard to the one and one-half ton Mack truck, would say that we will put the truck in your hands to use, the title to it to still remain in us, you to keep an accurate and careful account of the mileage, the cost of maintenance, and operation and the gross income, giving us a weekly report. We agree to allow you to retain $125.00 a month of the gross income for operating expenses, and all in excess of this amount to be divided equally, the part coming to us to be applied upon the purchase price of the truck, which is $3,150; provided, however, that the contract is carried out until the truck is paid for. In the event that it is not paid out, such sums as have been paid us will be considered as rent for the use of the truck. You to have the privilege, however, at any time, of paying out in cash the difference between what we have received in rent and the purchase price of the truck, and in the event that you do, we agree to give you a five per cent. discount on the balance that you pay on the truck. If this meets with your approval and is satisfactory, please sign this acceptance.

"Yours very truly,
"Hawkins-Halff Company,
"By G. W. Hawkins, Pres.

"Accepted: T. L. Waugh."

At the time of the delivery of the truck to Waugh, Hawkins, who was president of the corporation, furnished to Waugh a blank form for the weekly reports to be made by the latter as provided for in the contract, and in conformity therewith Waugh made to the corporation weekly reports showing an accurate account of the mileage, the cost of maintenance and operation, and the gross income from the use of the truck, and once in each month, in strict conformity to the contract, paid to the corporation one-half of the net profits of the earnings of the truck down to January 7, 1914, aggregating $729.-83, when the truck was seized by the sheriff of Harris county under a writ of sequestration sued out by the corporation in a suit brought by the corporation against Waugh for the recovery of the possession of the

truck; and the truck remained in the sheriff's possession until the trial of the suit.

Plaintiff alleged in its petition that no time was specified in the written agreement during which defendant was legally bound or obligated to continue to use the truck, and no time was therein specified during which plaintiff was legally bound to permit the defendant to hold the truck in his possession and to use the same in accordance with the terms of said contract, but that it was impliedly, if not expressly, agreed by the terms of the contract that the defendant could terminate and abandon the same at any time he so desired, and that plaintiff could terminate and abandon the same, and demand and resume possession of the truck at any time it so desired, before the defendant had exercised his option to purchase the truck as specified in the contract; that, no time within which defendant was legally bound to exercise his option to purchase the property being specified, said option was without consideration, and subject to be withdrawn by plaintiff at any time prior to its exercise by defendant, but that, if mistaken in this, then, by the implied terms of the contract, it was agreed that either party thereto should have the right to terminate and abandon the contract after the expiration of a reasonable time, prior to the exercise by defendant of his option to purchase and pay for the truck in accordance with the terms of the contract, and that one year from the date of the contract was a reasonable time after which plaintiff had the right to terminate the contract and resume possession of the truck; that defendant failed to exercise his option to purchase and pay for the truck in one year, whereupon plaintiff elected to terminate and abandon the contract, and then and there became entitled to the possession of the truck.

Defendant in his answer admitted the execution of the contract, but denied that plaintiff was then the absolute owner of the truck, and alleged that, while the contract provides that the legal title thereto was to remain in plaintiff, the defendant is the owner of an equitable interest therein by reason of the fact that he had paid toward the purchase price of the truck, before the institution of the suit, the sum of $728.83, said aggregate amount consisting of payments made by him in strict compliance with the terms of the contract; that he is now, and at all times has been, willing and anxious to pay the balance of the purchase price upon the terms and stipulations contained in the contract; that he has never breached the obligations of the contract in any way, and was at the time of the filing of this suit, and at all times prior thereto, carrying out said contract in all respects for the purpose and with the intent of paying the purchase price in accordance with its terms, and is entitled to the possession of the truck by reason thereof.

He further alleged that, if the contract was originally void for want of mutuality, plaintiff could not now so evade its obligation, for the reason that defendant has paid the sum of $729.83 towards the purchase price of said machine, as specifically pleaded, and had diligently and industriously used said truck for the purpose of paying out said car under the terms of said contract, as speedily as possible, and for the further purpose of establishing in use and advertising said style of Mack motor truck, and plaintiff had derived the full benefits contemplated by said agreement, and had received this consideration and the payments aforesaid, all of which was done on the reliance of defendant upon the representations and agreement of plaintiff that he should be allowed to pay out the contract in the manner provided, and that plaintiff cannot now avoid its obligation to permit the defendant to remain in possession of said truck so long as he complies with the terms of said contract, because defendant has acted in good faith upon said contract.

He denied that there was any implied or express agreement that the defendant could terminate or abandon the agreement at any time he so desired, or that plaintiff could terminate and abandon same, and asserted a covenant on defendant's part that he would use said machine in accordance with the terms of the contract until same had been fully paid for.

He further denied that the plaintiff had the right to terminate the contract after the lapse of a reasonable time prior to the exercise by defendant of his option to purchase, and denied that the defendant was required to exercise his privilege within a reasonable time, and asserted that, even if a reasonable time was applicable to the contract, one year was not a reasonable time for the purposes of said contract, and that said truck would have been paid for within a reasonable time, and the contract would have been carried out until the truck was paid for.

He further charged that said payments had been made in strict conformity with the contract, and had been made in reliance upon the right of defendant to continue to make payments upon said contract until total purchase price of same had been paid, and that the defendant was never advised until shortly prior to the institution of this suit that the plaintiff claimed the right to terminate the said contract at the expiration of one year, or at any other time, so long as the terms of said contract were complied with; that plaintiff led him to believe by the execution of said contract, and by all its acts and conduct pleaded, and by the correspondence, bills, receipts, and conversations passing between the parties, the moneys paid by defendant as applying to the contract purchase price of said car, that defendant

would be allowed to retain said truck until the full purchase price was paid so long as defendant continued to comply with the terms of said contract, regardless of the length of time that it might take to pay out said truck.

He further charged that the defendant had up to that time, and has at all times since, paid to plaintiff the full amount due plaintiff under said contract, and that plaintiff's action in theretofore accepting said payments without in any way complaining with regard to same shows that the construction limiting the defendant to a period of one year, or a reasonable time within which to pay out said truck, now attempted to be placed upon said contract, was never contemplated by the parties or either of them at the time of making said contract, or at any time subsequent thereto, until plaintiff's assertion of said right so to do, and that by reason of this construction placed upon the contract by both parties plaintiff was and is estopped to now assert that the obligation of this defendant was other than such as was originally recognized by both of said parties, to wit, to pay for said truck under the terms of said contract, no matter what length of time it might take to do so.

By his cross-action defendant sought recovery of damages against plaintiff and the Fidelity & Deposit Company of Maryland, the surety upon the plaintiff's sequestration bond, which was made a party to the cross-action, for unlawfully seizing the truck by virtue of the writ of sequestration, alleging that the sequestration was illegally, wrongfully, and maliciously sued out, and that the affidavit made for the purpose of suing out the writ was untruthfully, wrongfully, and maliciously sworn out on behalf of the plaintiff company with the intent to illegally, wrongfully, and maliciously secure the issuance of said writ as a means of securing the possession of said truck.

He further alleged that all of said illegal, malicious, and wrongful acts were done with knowledge on the part of plaintiff that they were so, and that they were approved and ratified by plaintiff for the purpose of forcing the defendant to enter into a new contract with plaintiff less advantageous to him than the one under which he held said motor truck, by taking from defendant's possession the said truck, which was essential to the maintenance of his business conducted under the name of "Gee-Whiz Auto Transfer & Storage Company," which act it was known to plaintiff would cause the defendant to lose heavily in his business. He further charges that by such acts plaintiff had rendered itself liable to defendant for both actual and exemplary damages. He prayed for judgment against plaintiff and the said surety on the sequestration bond for $5,000. as actual, and $15,000 as exemplary, damages, and that plaintiff be directed to deliver the truck to defendant to be retained by

him under the terms of the contract, or, in the alternative, that he have judgment for $729.83, being the sum paid by defendant to plaintiff under the contract.

The court submitted the case to a jury upon special issues, and upon their findings rendered judgment that the plaintiff take nothing against the defendant, and that the defendant recover possession of the truck, or, in the alternative, that the defendant recover $729.83, the amount paid by him to plaintiff under the terms of the contract, and further recover of plaintiff and its surety upon the sequestration bond the sum of $1,500 as actual damages, and the further sum of $2,000 as exemplary damages, together with all costs of suit. From this judgment, the plaintiff has appealed. During the pendency of the suit the plaintiff changed its corporate name to the Halff Company, and the appeal is prosecuted in that name.

[1]· Appellant's first assignment of error complains of the refusal of the court to sustain its general demurrer to defendant's answer. Under this assignment appellant contends by its propositions that:

(1) "Where one receives property to use, with an option to purchase, but otherwise to pay for the use of it, he receives it as bailee only, and does not obtain the property until the option is exercised."

(2) "A contract for the use of property, where no time is specified, is subject to revocation by either party."

(3) "Where the performance of the contract rests upon the will of one party, there is a lack of mutuality and the contract is void."

The first and second propositions may be admitted to be correct in the abstract; and the third is abstractly correct if the term "voidable" be used instead of "void," subject, however, to certain well-known exceptions; but it is our opinion that such questions are purely abstract as applied to the pleadings of the defendant, and furnish no reason for the sustaining of the general demurrer. Both parties pleaded the contract of October 25, 1912. By its express terms appellant retained the title. Whether the defendant acquired any equitable title by reason of making payments to appellant in accordance with the contract, or whether the transaction merely evidenced an option to defendant to purchase the truck, or a bailment or conditional sale, or whether the contract constituted as between the parties a chattel mortgage under article 5654, Revised Statutes of 1911, it is immaterial to determine in considering the assignment. Whatever the instrument may be, the legal effect of it was, as it seems to us, to confer the right of possession of the truck upon defendant until it was paid for, of which he could not be deprived as long as he complied strictly with its terms. Defendant alleged that he had complied strictly with all the obligations imposed upon him by the terms of the contract. The effect of the demurrer was to admit as true all of the allegations of the answer, which, in effect, were that the con-

tract had been executed; the truck placed in his possession in pursuance thereof; that he had kept an accurate account of the mileage, the cost of maintenance, and the gross income; that he had paid to appellant one-half of the net earnings upon the purchase price up to the time of the seizure, aggregating $729.83. All this being admitted, defendant was entitled, under our construction of the contract, to retain possession of the truck until he breached the contract in some of its provisions, and that until he did so the appellant had no right to recover its possession from him.

[2] It is true that the contract does not bind the defendant to perform any of its provisions, and that it is for this reason unilateral; but the mere want of mutuality did not render the contract unenforceable after defendant had accepted the possession of the truck, and in all things performed his part of the agreement, especially after he had paid $729.83 in part performance, and offered to strictly carry out its terms until the full purchase price of the truck should be paid. Hawralty v. Warren, 18 N. J. Eq. 124, 90 Am. Dec. 613; Pittsburg Brick Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604; Schroeder v. Gemeinder, 10 Nev. 355; McAfee v. Grubb, 164 S. W. 925. If this were not so, then the appellant would have had the right to declare the contract at an end and take possession of the truck at any time, even after the defendant had, in strict conformity to its terms, paid in dividends only a few dollars less than the purchase price of the truck. Nor does the fact that no definite date is specified in the contract within which defendant by the use of dividends might pay for the car render the same unenforceable, in view of the fact that it seems to us to have been clearly contemplated and provided that he should have such use until the purchase price was paid out of one-half of the net earnings of the truck, whatever the length of time it might require to accomplish this. That the contract may have been, as to appellant, an improvident one, is no reason for its avoidance or for the refusal of the courts to enforce it.

[3] The further proposition under the first assignment is to the effect that, as neither party had pleaded ambiguity in, or fraud or mistake in the execution of, the contract, it became the duty of the court to construe the contract. This proposition is not germane to the assignment under which it is urged, which only complains of the refusal of the court to sustain a general demurrer to the defendant's answer. We think that the answer was good on general demurrer, and the assignment is overruled.

What we have said above sufficiently disposes of appellant's second assignment of error, which complains of the refusal of the court to sustain its special exception to defendant's answer, based upon the assumption that the contract gave to appellant the right to cancel the contract at any time, at will, or upon proper notice.

[4] The fourth assignment complains of the action of the court in submitting to the jury the construction of a portion of the contract; its contention being that the contract was unambiguous and should have been construed by the court. It is true that it is the duty of the court to construe a written contract which is free from ambiguity, and should submit it to the jury for construction only when its meaning is not free from doubt; still we think that no prejudicial error was committed by the court in the matter complained of, as, in our opinion, the jury gave the only construction thereof of which the contract was susceptible. The jury found that in executing the contract there was an understanding and agreement between the parties as to the matters embraced in their two next findings; and in the two next findings they answered that it was not the understanding that the appellant should be entitled to take back the truck, if appellant so desired, provided the defendant, upon reasonable notice, failed or refused to pay the balance of the purchase price with 5 per cent. discount, but that it was agreed and understood that defendant's right to the continued possession of the truck (under the provisions of the contract in regard to reports, payments, and operation, etc.) was not to be subject to termination at the instance of plaintiff, upon reasonable notice, and with opportunity being given to pay the balance of the purchase price, etc. We think this is clearly the proper construction of the contract, and the interpretation that the court would have been compelled to give it, and that for this reason the action of the court complained of, even if technically wrong, could not have prejudiced the appellant.

The fifth, sixth, and seventh assignments are sufficiently disposed of by the disposition we have made of the fourth, and they are severally overruled without further comment.

[5] In special issue No. 7 the court submitted to the jury for its finding the following:

"In making the affidavit on which the writ of sequestration was based [referred to in the pleadings], did the affiant fear that the defendant would injure the truck, as stated in the affidavit?"

The jury answered in the negative. The eighth assignment is predicated upon the submission of this issue; the contention being that the undisputed testimony shows that the truck would be injured by its continued use. The only testimony on this issue called to our attention by appellant in its brief is that of Hawkins, the president of appellant corporation, and that of defendant, Waugh. The former testified, in

effect, that the use of the truck by Waugh would deteriorate its sale value the first year 50 per cent., though its use would not decrease that much; and the latter testified that:

"The sale value of the truck deteriorates after being used; if you put one out for a short time, it deteriorates in value."

We think this testimony falls far short of showing that the mere use of the truck in the ordinary manner for which its use was designed would "injure" it as that word is used in article 7094, Revised Statutes. It is known of all men that the use of machinery lessens its sale value; and the lessening of the sale value was the only injury that the witnesses testified would occur by reason of the continuity of possession by defendant. The parties knew and contemplated at the time of the execution of the contract and the delivery of the truck to defendant that this particular injury would inevitably occur from the use to which it would be applied, and we think it is clear that the fear of such injury only did not afford just ground for the suing out of the writ of sequestration and wresting from defendant the possession of the truck thereunder. The ninth assignment presents substantially the same question as the eighth, and both are overruled.

[6] The tenth assignment complains of the submission by the court of the eighth special issue, which is as follows:

"Was the sequestration affidavit in question sworn out without fear on the part of the affiant that the defendant would injure the machine, as therein stated, or the making of said affidavit, or the causing of the writ of sequestration to be executed in this cause, prompted by malice?"

The contention is that there was no testimony to justify the inference of malice, and it was therefore prejudicial error to appellant to submit the issue, and, further, that the charge is upon the weight of the evidence. The testimony shows the following facts: The truck was delivered to the defendant on October 25, 1912, the date of the contract, and that defendant continuously used it in his business until January 7, 1914, when it was seized by virtue of the writ of sequestration; the defendant in the meantime complying strictly with the terms of the contract. On December 29, 1913, the appellant, through its general manager, Temple Wheeler, wrote a letter to defendant in which, among other things, he said:

"* * * The payments heretofore made by you are very unsatisfactory in view of what was contemplated when the contract was formed and in view of the mileage and cost of operation and maintenance as far as shown by your previous reports; so that unless your reports show a considerable improvement in the earnings of the truck and your consequent payments to us, or unless you can arrange to make more satisfactory payments, we are inclined to insist that you will return the truck to us."

On January 2, 1914, Wheeler, the appellant's general manager, again wrote to defendant, saying, among other things:

"* * * In view of the fact that your accounting to this company falls very greatly short of what was contemplated when the contract was made, we now request that you return the truck to this company, or that you arrange to exercise your option to pay the agreed price, less the sums heretofore paid over by you, and keep the truck."

Defendant testified:

"I had a conversation with Mr. Temple Wheeler, the manager of plaintiff, about this matter some time in December, 1913, at his office. When I got down there, he stated he wanted to talk to me about the truck. We talked pleasantly for a while, and then he told me he would have to change the contract. He first asked me to change the contract, and I told him, in the first place, I could not, and, in the second place, I did not consider that I had to; that I was living up to the contract, and I would not consider it, at least, right in the worst season that we have. He was complaining about the returns in December. * * * First he wanted me to make him a payment of $250 a month flat on the car, and I told him I could not do that even if I did not have the contract, and I certainly would not where I did have a contract, and he got pretty hot about it, and finally he told me I would change that contract or he would put me on the bum; that was the exact expression he made."

"He asked me if I knew that the Halff Company was worth a million or a million and a half dollars, and I told him I understood they were rich people, and he says: 'That is the thing you are up against, and you will be without a car if you do not change contract.' * * *"

We think the above facts, which are not disputed, sufficiently raised the issue of malice in suing out the writ of sequestration to warrant the court in submitting that issue to the jury. The assignment is overruled.

The second and fourth propositions under the assignment are not germane and will not be considered in connection with it. The charge was not upon the weight of the evidence, and the fifth proposition, which raises the point, is overruled.

[7] The thirteenth assignment complains of the refusal of the court to give appellant's special charge No. 2, which submitted the issue as to whether the defendant owned and operated the Gee-Whiz Auto Transfer & Storage Company in his individual capacity or jointly with one or more of his sons. The fourteenth assignment complains of the refusal of the court to give appellant's special charge No. 3, which in different verbiage submits practically the same issue, and the fifteenth assignment is based upon the refusal of the court to strike from the record, upon appellant's motion all testimony in reference to damages suffered by the Gee-Whiz Auto Transfer & Storage Company. The propositions subjoined to the assignments are that, in a suit by an individual for damages, recovery cannot be had where the damages are shown to have been sustained by the firm of which he was a member, and that the burden of proof is upon a party asking damages to prove his right to recover, and that the damages were sustained by him individually. The evidence is sufficient, we think, to show that the truck

was used in connection with the Gee-Whiz Auto Transfer & Storage Company, which was a copartnership composed of defendant and one or more of his sons, and that the profits arising from the use of the truck inured to the benefit of the copartnership.

The defendant urges the following counter proposition:

"Where a suit is brought against an individual involving a contract executed between the plaintiff and such individual, the plaintiff cannot successfully assert, as precluding a recovery on a cross-action by defendant in his individual capacity, a contention that the damages sued for in the cross-action, though arising entirely out of the breach of the contract between the parties, were suffered by an alleged copartnership, the remaining members of which were not parties to the suit, especially where there is no proof that the contract had been assigned to the partnership."

This proposition seems to be sustained by the following authorities: Mo. Pac. Ry. Co. v. Smith, 84 Tex. 350, 19 S. W. 509; Covington v. Sloan, 124 S. W. 690; Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 30; Bryant v. Phillips, 189 Mo. App. 278, 176 S. W. 294.

There was no proof that the contract had been assigned by Waugh to the partnership, and the evidence warranted the jury in finding that the contract had been breached by the appellant. The negotiations in regard to the truck were between Waugh and the corporation only, and in their subsequent dealings in reference thereto Waugh, and not the partnership, was recognized by the corporation as the contracting party. The assignments are overruled.

[8] The twenty-eighth assignment complains that the verdict for defendant for $1,500 for actual damages is excessive. We cannot say that the verdict for actual damages was without the support of evidence. The jury, in response to special issues, found, and upon testimony that warranted them in so doing, that there was no reasonably established rental value for the truck in question, or for trucks that could have been used in lieu thereof, in defendant's business; that defendant made reasonable efforts to secure a truck in place of the one he was deprived of, and to replevy the truck in question, but without success; that the reasonable value of the use of the truck in question from January 7, 1914, when it was sequestered, to the date of the verdict (a little more than ten months), was $150 per month.

The evidence which warranted this last finding consisted of the testimony of defendant, as follows:

"The value of the use of the car to us represents the entire amount we paid to Mr. Hawkins per month, and what we could save per month out of that $125, if any. We also got 50 per cent. of the net proceeds. Our profits for the time the contract ran were $729.83, the same as Mr. Hawkins got. We figured it that there was quite a saving in the expense account for the 14 months; the $125 per month that we were allowed for expenses amounted to $1,750. Our actual expenses for the 14 months for operating the truck were $776.76, or a saving to us of $973.24 to be applied to our profits in operating the machine. We considered the driver as our profits, he being a member of the family, my sons, either T. H. or Alec Waugh. We did not pay our driver a fixed salary; bread and meat was all he got out of it. For the time we used it the total profits were $2,432.90 for 14 months, which represented the value of the use to us during that time, and our operating expenses were $776.76. The total gross receipts of the car for the 14 months I figured was $3,184.66. The value of the car to us since the seizure would have been under the same figures that it would have earned for us during the same period during the other time. The value in a lump sum would be $150 per month."

He further testified:

"Yes; my profits during the 14 months were $2,432.90. I figured that I saved about $900 out of the operating expense. I turned over to the Halff Company $729, and the same I kept for my half."

He further testified:

"I have handled motor trucks for something like three years, and by reason of my experience in handling them I know the reasonable value of the use of same. The reasonable value of the use of this truck during the period that it has been detained has been about $150 per month for the truck alone; that is the reasonable value of it; yes. The reasonable value of the use to us was the reasonable value of the truck."

The jury gave credence to this testimony of the defendant, and found in accordance therewith. The assignment is overruled.

[9] The twentieth assignment complains that the verdict for $2,000 as exemplary damages cannot be sustained. The jury found that the writ of sequestration was sued out maliciously and without probable cause. We have hereinbefore set out the evidence which, in our opinion, justified this finding. The jury further found that the appellant corporation knowingly ratified and adopted the said malicious act on the part of the affiant in making the affidavit for the issuance of the writ. This finding is not assailed.

"The amount of exemplary damages is largely in the discretion of the juries, and this court can only set aside their verdict for excess in amount in such cases when the damages are so large as to show passion, prejudice, or partiality." Mayer v. Duke, 72 Tex. 453, 10 S. W. 569.

The verdict for exemplary damages in this case is not so large or so disproportionate to the amount of actual damages awarded that we can say that the jury were actuated by an improper motive in making the award. Railway v. Thompson, 108 S. W. 457.

[10] The refusal of the court to sustain appellant's exception to that portion of the defendant's cross-bill which alleged damages in the sum of $250 for the loss of a horse and mule by overwork, on account of being deprived of the use of the truck, is not reversible error, for the reason that this damage was not submitted by the court to the jury in its charge, and the appellant could not therefore have been prejudiced by the action of court complained of.

[11] The admission of the testimony of defendant, over the plaintiff's objection, that

he used his teams to handle long hauls that should have been done with the truck, and that that was the cause of "knocking out" two of the horses, and that the Gee-Whiz Auto Transfer & Storage Company has a five-year lease upon a storage house, and that because of the loss of the truck they were unable to pay their lease on account of loss of business, was not such error, if error at all, as to require a reversal of the judgment. The only possible effect this evidence could have had would be to increase the amount of exemplary damages. We have already held that the exemplary damages awarded were not excessive, under the evidence, and we think this is true, even though the testimony here complained of was improperly admitted and considered by the jury. However, these items were not submitted by the court to the jury, and there is nothing in the amount of their award, or otherwise shown by the record, to lead us to the conclusion that the appellant was prejudiced by the action of the court complained of.

We shall not discuss appellant's other assignments of error in detail; for to do so would extend this opinion, already too long, to an unreasonable length. It must suffice to say, therefore, that we have carefully examined all of the assignments, and find no reversible error in any of them.

The judgment of the court below is affirmed.

Affirmed.

8. TRIAL ☞133 — IMPROPER REMARKS OF COUNSEL—WITHDRAWAL—ACTION OF COURT.
In a personal injury case, where the remarks of plaintiff's counsel in presenting the case to the jury were not such as to inflame their passions or to arouse their prejudice against defendant, and where, upon objection, the remarks were promptly withdrawn by counsel, while the court promptly instructed the jury to disregard them, their making was harmless.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.