The Pittsburg Vitrified Paving and Building
Brick Company v. Samuel Bailey *et ux.*

No. 15,026.  (90 Pac. 803.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Oil-and-gas Lease—Option—Construction.*  B.
and wife, owners of certain land, entered into a written
contract with a corporation, which by its terms granted to
the corporation, in consideration of one dollar and the agree-
ments made by the company, the privilege of entering upon
the land for a term of ten years and boring gas- or oil-wells,
etc., and, in the event of the discovery of oil or gas in pay-
ing quantities, conveyed the title to such products for a
specified royalty.  The company agreed to complete a well
within two years or to pay a rental of twenty-five cents per
acre until a well should be completed on the premises.  The
contract also provided that the term might be extended in-
definitely at the option of the company so long as gas or oil
was· found in paying quantities or the rental was paid; also
that the company had the right to surrender the contract at
any time and be thereby discharged from all liability for the
non-fulfilment thereof.  *Held*, that such contract is not,
strictly· speaking, a lease of the premises, but constitutes a
sale by B. and wife to the company of an option to exercise
or not to exercise the privilege granted, as the company
might choose.

2. ——— *Mutuality.*  Such contract is not void for want of
mutuality.  It is of the essence of an option contract that it
is not mutual.  The purchaser pays his money or does what
he agrees to do for the privilege of choosing whether or not
he will perform or claim performance of the contract, and
for the consideration received the seller parts with his right
of choice.

3. ——— *Construction—Ambiguous Terms — Conduct of the
Parties.*  Where certain terms of a contract are ambiguous,
but such terms have been construed and acted upon by the
parties interested, such construction will be adopted, even
though the language used may more strongly suggest an-
other construction.

4. ——— *Consideration.*  The amount paid at the execution of
the contract and the rental thereafter paid constitute a suf-
ficient consideration to support the contract in its entirety.

5. ——— *Suit to Set Aside—Evidence.*  The agreed statement
of facts entitles the defendant to a judgment in its favor.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed June 8, 1907. Reversed.

## STATEMENT.

THIS suit was brought in the district court of Montgomery county to set aside an oil-and-gas lease executed by the Baileys to the brick company on 160 acres of land in that county. The case was tried upon the pleadings and an agreed statement of facts, and, the judgment being adverse to the brick company, it comes here for a review of the legal questions involved. The contract involved in this action is as follows:

"THIS AGREEMENT, made this 4th day of September, 1902, between Samuel Bailey and Emma B. Bailey, his wife, as party of the first part, and the Pittsburg Vitrified Paving and Building Brick Company, as party of the second part;

"WITNESSETH: That said party of the first part, in consideration of one dollar, receipt of which is by first party hereby acknowledged, and of the agreements hereinafter mentioned, has leased and let to the party of the second part, for the purpose and with the whole and exclusive right of drilling and operating for oil and gas, the following-described land in Montgomery county, Kansas, to wit:

"The N. E. ¼ of section eight (8), township thirty-three (33), range sixteen (16), being a total of 160 acres more or less, together with right of way over the premises to the places of operation, right to lay pipes to convey water, oil and gas and to remove any machinery and fixtures placed on the premises by second party; party of the second part to have and to hold said premises for and during the term of ten years from date hereof, and as much longer as gas or oil shall be found in paying quantity or the rental paid thereon.

"The party of first part shall fully use and enjoy said premises for farming and all other purposes except such parts as may be necessary for purposes aforesaid, but no well shall occupy more than one-half acre. All oil or gas shall belong to second party; provided, however, that second party shall deliver in tanks at the wells of the first party (⅛) one-eighth of

all oil produced on these premises, and pay the market price in cash for the same if the first party so desire, and ($60) sixty dollars per year for each gas-well producing five million or less cubic feet per day, and $100 per annum for each well exceeding that production, while and so long as gas shall be sold therefrom; gas and oil to second party free of cost for operating purposes upon said premises and vicinity and to first party free of cost for household use on the premises. No gas to be piped out of the county.

"No well shall be drilled within 300 feet of present buildings, without consent of first party. And pipe-lines will be laid within 50 feet of residence on the above-described land as soon as gas can be procured, and without cost to first party, but in the event free gas furnished the rental will not be paid by second party.

"It is further agreed that the party of the first part shall have the right to case and own any well abandoned by second party.

"Second party agrees to complete a well on the premises within two years from date hereof, reasonable, unavoidable delays and accidents excepted, or in default thereof pay to first party a yearly rental of 25 cents per acre for further delay from the time above specified for completing well until such well shall be completed; said rental shall be paid direct to first party on the first day of the seventh month after the date of this lease. A failure to complete such well or make such payments shall render this lease null and void. It is further agreed that second party shall have the right at any time to surrender this lease and shall be thereby fully discharged from all damages and claims arising from non-fulfilment of this contract. Second party shall pay all damages done to land or growing crops by operating or laying of pipes by them and when requested lay all pipes below plow depth.

"No well shall be located on cultivated ground without first party's consent.

"All rights between the parties hereto shall extend to their heirs, executors, administrators, successors and assigns, respectively.

"Witness our hands and seal.

SAMUEL BAILEY.   (Seal.)

EMMA B. BAILEY.   (Seal.)"

*W. J. Gregg,* for plaintiff in error.

*John Bertenshaw,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: Written contracts of this character are commonly called oil-and-gas leases, but, as was said in *Dickey v. Brick Co.,* 69 Kan. 106, 76 Pac. 398, "they are not strictly 'leases,' as defined and treated in the law of landlord and tenant; they are in the nature of a written license, with a grant conveying the grant-or's interest in the gas- or oil-well, conditioned that gas or oil be found in paying quantities." (Page 110.)

The contract in this case first licensed the brick company, in consideration of one dollar and of the agreements therein contained on the part of the company, to bore wells for oil and gas on the premises described, and, if either were found in paying quantities, conveyed the same to the company. It also authorized the company to occupy the premises so far as necessary for operating wells, laying pipes, etc. The term of this license is ten years, and so much longer as oil or gas shall be found in paying quantities or the rental paid thereon. By a subsequent provision the company agreed to complete a well within two years from the date of the contract, reasonable, unavoidable delays and accidents excepted, or in default thereof to pay a yearly rental of twenty-five cents per acre from the expiration of the two years until a well should be completed. A failure either to complete the well or make the payment renders the contract void after the lapse of two years.

It is further provided that the "rental shall be paid direct to first party on the first day of the seventh month after the date of this lease." This seems ambiguous, to say the least, when compared with the expressed purpose for which rent was to be paid and from what time it was to be paid. Were we required to reconcile these provisions and arrive at the intent of the parties we should probably conclude that rent be-

gan to accrue two years from the date of the lease, viz., September 4, 1904, and the first annual instalment thereof was payable April 1, 1905, and that annually thereafter until the company completed a well or surrendered the lease another instalment would become due and payable. We are not, however, required to solve the ambiguity, as it appears by the agreed statement of facts the parties mutually placed a construction upon it and acted upon that construction. It is agreed that on the 24th day of October, 1902, fifty days after the execution of the lease, the company paid the lessors forty dollars as oil-and-gas rentals to September 4, 1903, on the land in question, and the lessors gave a written receipt therefor; that on September 2, 1903, another payment of forty dollars, as rent to September 4, 1904, was made and receipted for. By so doing the parties, in effect, said that by the terms of the lease the rent began to accrue immediately upon the execution thereof.

On the 4th day of September, 1904, the company tendered to the lessors forty dollars in payment of rent to September 4, 1905, but the lessors refused to accept the same for the reason that "said pretended lease by the terms thereof is merely an option which can be revoked at any time at the election of either party thereto, and that upon such election the same ceases to be of any validity and is no longer binding upon either party thereto." To this contention we cannot assent. It may be conceded that it is an option contract, yet it does not follow that it can be revoked at pleasure by either party thereto.

It is of the very essence of an option contract that one party has the choice of concluding or not concluding the proposed transaction, while the other party has no choice. He undertakes for a certain consideration to do a certain thing or to permit the other party to do a certain thing within a certain time on the demand of the other. This right of choice is what the other pays for. (21 A. & E. Encycl. of L. 928. See,

also, *Bradford v. Foster*, 87 Tenn. 4, 9 S. W. 195; *Clark v. Gordon*, 35 W. Va. 735, 14 S. E. 255; *Sayward v. Houghton*, 119 Cal. 545, 51 Pac. 853, 52 Pac. 44.)

It is urged that there is no mutuality in this contract—that it is unilateral. It is well said in volume 9 of the Cyclopedia of Law and Procedure, at page 334:

"When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option while the other has not, or in other words because it is obligatory on one and optional with the other. . . . So want of mutuality cannot be set up as a defense by the party who has received the benefit, simply because it was left optional with the other party. as to whether he would enforce his right." (See, also, *Pennsylvania Co. v. Dolan*, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289.)

Under the conditions of the contract, as construed and acted upon by the parties thereto, the company paid one dollar and became obligated to pay forty dollars per annum rental from the day of its execution until such time as it should complete a well or surrender the lease. It exercised its option by paying the rent for two successive years, and the lessors acquiesced in the part performance of the contract by accepting. The lessors will not therefore be heard to say, when the third year's rent is tendered, that the contract is unilateral and revocable by them because the company might have then exercised its option to surrender the lease.

The consideration is not only valuable; it is adequate. Although this decision is not based thereon, the writer is of the opinion that the one dollar consideration, admitted to have been received, is, in the absence of fraud or bad faith, sufficient to sustain this contract. Supporting a contract almost identical in this respect with the one here it was held, in *Allegheny Oil Co. v. Snyder*, 106 Fed. 746, 45 C. C. A. 604, that the lease constituted an entire contract, and that the

consideration recited, being one dollar, supported not only the grant of the two-year term but as well the privilege of extending the time for drilling by paying the stipulated price therefor.    (To much the same effect see *Brown et al. v. Fowler et al.*, 65 Ohio St. 507, 63 N. E. 76; *Gas Co. v. Eckert*, 70 Ohio St. 127, 71 N. E. 281.  See, also, 1 Bouv. Law Dic. 406; 6 A. & E. Encycl. of L. 694-696.)

There is no provision in this lease which is not a legal subject of contract, and there is no suggestion of fraud or bad faith in the transaction.  Considered as an option, it was bought and sold for a valuable consideration, and the purchaser is entitled to what it bought.    Assuming, as they allege, that it would be of considerable advantage to the sellers to annul their contract, this constitutes no legal justification for so doing.  Were this recognized as a sufficient ground for avoiding contracts it would revolutionize the business world.

The petition did not state facts sufficient to constitute a cause of action, and the agreed facts did not justify the judgment, which is reversed, and the case is remanded, with instructions to render judgment for the defendant.

JOHNSTON, C. J., GREENE, MASON, PORTER, GRAVES, JJ., concurring.

BURCH, J. (concurring specially): I concur in the judgment.