## GREGORY v. PECOS & N. T. RY. CO.

(Court of Civil Appeals of Texas. Amarillo. March 8, 1913. Rehearing Denied April 5, 1913.)

1. RELEASE (§ 13*)—CONSIDERATION.

A brakeman, injured in the employ of a railroad company, signed a release for such injuries in consideration of $1 and "of the promise of said company to employ me for one day as ——, at the usual rate of pay," and the brakeman afterwards applied to the company for the position of flagman, in which application it was stated that his employment was to be from day to day, and he was employed as flagman, and afterwards as passenger brakeman, and then as bill clerk. Held, that there was a sufficient consideration for the release, though it did not fix the nature of the employment; that having been fixed by the subsequent acts of the parties so as to constitute a completed transaction.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21–27, 29; Dec. Dig. § 13.*]

2. RELEASE (§ 58*) — MISREPRESENTATIONS — EVIDENCE.

Evidence, in a brakeman's action for personal injuries, held to make it a jury question whether, when a release was brought to plaintiff for his execution at the hospital, the hospital physician and the claim agent did not tell him that he was practically well and would be well in a few days.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 109–114; Dec. Dig. § 58.*]

3. MASTER AND SERVANT (§ 296*)—INJURIES—CONTRIBUTORY NEGLIGENCE—CONCURRING NEGLIGENCE.

Under the employer's liability act (Rev. Civ. St. 1911, arts. 6644, 6649), providing that the preceding articles shall not impair or diminish the defense of contributory negligence when the injury of an employé of a common carrier is caused proximately by his own contributory negligence, except as otherwise provided, and that the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished in proportion to the amount of negligence attributed to such employé, it was error, in an action by a railroad brakeman for personal injuries, to instruct that if the contributory negligence of plaintiff, concurring or co-operating with any negligent act of defendant, was the direct cause of the injury the jury should find for defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

4. TRIAL (§ 296*)—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

Error in instructing, in a railroad brakeman's action for injuries, that if plaintiff's contributory negligence, concurring with any negligence of defendant, was the direct cause of the injury the jury should find for defendant, was not cured by a correct instruction that plaintiff's contributory negligence would not bar a recovery, but that his damages should be reduced in the proportion that his negligence bears to the defendant's negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

Appeal from District Court, Swisher County; L. S. Kinder, Judge.

Action by E. Gregory against the Pecos & Northern Texas Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded upon granting a motion for rehearing.

Barrett & Jones, of Amarillo, and Martin & Zimmermann, of Tulia, for appellant. Terry, Cavin & Mills, of Galveston, and Madden, Trulove & Kimbrough and F. M. Ryburn, all of Amarillo, for appellee.

HENDRICKS, J. The appellant, Gregory, sued the appellee, the Pecos & Northern Texas Railway Company, in the district court of Swisher county for damages for personal injuries, alleged to have been sustained while a brakeman in the employ of said company, and, in substance, stated that in the line of his work at a certain switch it was his duty to board a train upon which he was employed, and for that purpose he signaled the engineer with a stop signal, whose duty it was to slow the train to about 5 miles an hour for the purpose of permitting him to alight thereupon, which the engineer negligently failed to do; that the train was advancing at from 10 to 12 miles an hour, and on account of facing the train, he was unable to measure the rate of speed of the advancing train, and he caught a handhold on one of the cars of the moving train for the purpose of boarding the same, and not until then did he ob-

serve the real speed of the train, but too late to prevent the alleged injury, which was created by a jerk of his body into such a position that his heel struck a cross-tie.

The defendant answered with pleas of contributory negligence, assumed risk, and the execution by plaintiff of a written release of all damages for a valuable consideration, and in reply to the latter defense the appellant, plaintiff below, alleged that the release was obtained by misrepresentations of the agents and physicians of the defendant railway company, expressed prior to and at the time of the execution of said release, as to the condition and permanency of his injury; that defendant further promised him re-employment of such a nature that it would not interfere with his injuries; all of which representations were false, and the latter promise was not complied with.

The jury, upon the submission of a charge upon the issues involved, returned a general verdict in favor of the defendant railway company.

[1] First. Upon the original hearing of this cause we decided that this release, although based upon the consideration of a dollar and the additional consideration of the promise of re-employment, was definitely settled by the Supreme Court not to be a nudum pactum in the case of Quebe v. Gulf, Colorado & Santa Fé Ry. Co., 98 Tex. 14, 81 S. W. 22, 66 L. R. A. 734, 4 Ann. Cas. 545, where Justice Williams says, in discussing a release in the same language, except as hereinafter indicated, that "the consideration was a valuable and legal one, though small;" and we further held, upon our construction of the evidence, that there was not sufficient testimony upon the whole case to submit the issue of the voidability of said release to the jury, and that it must stand as a determination of appellant's rights; and the appellant, upon rehearing, and in argument, oral and written, is insistent that we committed error in our consideration of the release pleaded by the appellee as a determination of appellant's rights, and in attacking the position advanced by us as to the validity of the release upon the proposition of the consideration sustaining the same attempts to apply the case of Railway Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644, decided by the Supreme Court, and analogizes the release there involved and the principle there enunciated to the one in this record, as lacking in mutuality of obligation and not binding in law upon him.

Second. On this phase of the case we applied the case of Quebe v. G., C. & S. F. Ry. Co., decided by the same court, and reported in the same volume immediately preceding the Smith Case, cited by appellant (98 Tex. 6, 81 S. W. 22, 66 L. R. A. 734, 4 Ann. Cas. 545), and upon the immediate question we think, upon a consideration of this record, the cases are distinguishable, and that the Quebe Case applies. The Supreme Court, in the Quebe Case, decided that a release in hæc verba the same as the one in this record, the alleged fraud not having been proven, was a determination of Quebe's rights. However, there is an omission in the release in this case not occurring in the Quebe Case in this: After the recitation of the consideration of one dollar in the Quebe release, there is the additional recitation, "and in consideration of the promise of said company to employ me for one day as carpenter at the usual rate of pay," etc., while in this release the recitation is as follows, "and in consideration of the promise of said company to employ me for one day as ———, at the usual rate of pay"; the difference being the omission of the character of employment unrecited in the release. Justice Williams said in the Smith Case, in discussing the definiteness of promises in releases and the question of mutuality involved: "The authorities go further and hold that where a particular, definite thing is to be done by the promise, and he enters upon the performance, that fixes the obligations and binds both parties to the contract." Fontaine v. Baxley [90 Ga. 416] 17 S. E. 1015. The principle might have application here if the terms of the stipulation had been such that the time of employment could be legally ascertained. In that case [meaning the Georgia case], by entering upon performance, the defendant would, perhaps, have removed the objection that it was not originally bound to employ at all, and all the terms of the contract would have become fixed." In this case the character of the employment, upon the face of the release itself, seems to have been unfixed. It is to be noted in this release there is a recitation that the company "will not promise employment to or consider any one as an applicant for re-employment who has an unadjusted claim against it." While appellant says at the time the release was signed by him he had no claim, however, he treated with the company on the basis of having a claim, and signed a release, if valid, extinguishing it, and it is to be observed in his testimony that the promise of re-employment was the moving consideration to him of its execution, and says that the claim agent told him that he could not get employment while he had a claim of injury, and would have to sign a release, which he did, and which was dated the 26th of January, 1910. The record shows that upon the 31st day of January, 1910, he signed his application to the company for the position of flagman, in which it was stated that his employment was to be only from day to day, and the record further discloses that he was employed as flagman for a while, then as passenger brakeman, then as assistant bill clerk, successively by the same company.

Appellant did not plead a failure of consideration against the release, and seems to have attempted an attack upon it solely on the ground of misrepresentation as to his condition. Appellant's desire for re-employment, the application for employment as flagman, and the employment as flagman constitute a completed transaction in this record, we believe fairly inferable, and all ingredients of the same transaction; and the language used by Judge Williams in the Smith Case, distinguishing other cases, is applicable, and the objection of lack of mutuality is removed and the terms of the contract as to the character of the employment have become fixed, and can be legally ascertained, considered as a completed transaction. The contract itself legally ascertained and definitely fixed the term and character of employment; and the consideration in the Quebe Case, i. e., the payment of $1 and the promise of employment for one day as carpenter, which elements are also fixed in this cause by the contract, followed by the application for employment as a flagman, and the employment in that capacity, which constituted a series of acts in a completed transaction, and amount to the Quebe Case.

[2] Third. Appellant also complains of the extent of our deductions from the testimony upon the matter of fraudulent representations as to the permanency of his injury, and upon a reconsideration of this record we are inclined to think that this complaint is a just one. The following is the testimony of appellant with reference to the statements and representations of the servants of the appellee as to his injury: "When I went to the hospital, the claim agent came around. After I returned to Amarillo, he came. I did not have any claim against the company at that time. The claim agent said I could not get employment while I had the claim of injury. He told me I would have to sign up a release. He gave me employment; gave me $1, and asked me to sign the release. This was dated the 26th day of January, 1910. * * *" Again he said: "When they brought the release to me to sign, they told me they thought I was practically well and would be well in a few days. The doctor first told me, and then the claim agent. This was Dr. Kaster. As to whether I believed what the claim agent and doctors told me, I believed they were honest men and would tell me the truth. While I was at the hospital, laying around, I got better. I believed at the time I signed the release I was better. I did not believe that I was well. I did not know my injury was permanent. I just had to take the doctors' word about it. I believed what they told me. What caused me to sign the release I thought from what the doctors said, and I knew I was better—thought I was going to get well, and I wanted to sign the release because I was out of money and needed work. They told me they would give

me employment, together with a dollar. They gave me the dollar, and I tendered it back to them on the first trial of this cause, and it is now here in court. At the time I signed the release there was no doctor present. There was the claim agent, and some young fellow I didn't know was present. Neither Dr. Kaster nor any other doctor was present."

The claim agent, who obtained the release from the appellant, testified as follows: "Plaintiff and I made the settlement. The doctor was not present. I have no knowledge of any person representing that his injuries were slight, or that he would be able to resume work in a few days."

We construed the testimony of the appellant, taken in connection with the testimony of the claim agent, as to conclusively show that there was a lack of combination of action between the physician and claim agent with reference to the statements made to appellant as to his condition, and held that, the evidence failing in this respect, the statements of the physician, independent of those of the claim agent, would not avail him, and that as to the physician's statements the doctrine of respondeat superior would not apply; the evidence showing, as we thought, that the statements of the agent, who made the settlement, were disassociated from the statements of the physician, and it not having been shown, under the authority of the Huyett Case (Gulf, C. & S. F. R. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. [N. S.] 669), decided by the Supreme Court, that the physician had the authority to settle claims, and no evidence showing that the physician's statements were imputed to the claim agent, who did have authority to settle, the expressions of the doctor were the expressions of a stranger, and that the expressions of the claim agent were merely those of the statement of a nonexpert, and it was necessarily a point about a matter with reference to which the plaintiff had equal knowledge. We reasoned that because the evidence conclusively showed that the release was signed in Amarillo, when Dr. Kaster was not present, and because it was executed subsequently to the time he was at the hospital at Topeka, Kan., that he testified as to the statements made to him as to his condition, when they brought the release to him to sign, "that the doctor first told him and then the claim agent," that he really meant that the doctor first made the statement as to his condition while he was at Topeka, and the claim agent made a similar statement at Amarillo at the time of the execution of said release, and when it was brought to him to sign, because the evidence was conclusive that Dr. Kaster was not at Amarillo at that time, and, as we thought, the evidence failed to show that any release was ever tendered him at Topeka for signature. In this we erred. The testimony is susceptible of the

construction that the claim agent was at the hospital at Topeka; that they brought the release to him for execution while in the hospital. and at that time Dr. Kaster and the claim agent informed him that he was practically well and would be well in a few days; and as the testimony further raises the issue that his injury was in the nature of a permanent one, and that the railway company was negligent, either proximately or concurrently, in producing the injury, it follows that if the trial court committed an error involving the merits of the case this cause should be reversed.

[3] Fourth. The appellant assigns error on account of the submission by the trial judge of the fifth special charge, requested by defendant, with reference to which the defendant urges, if any error was committed in this respect, it was cured by the submission of its sixth specially requested instruction, both charges being set out herein in full:

Fifth Special Charge: "Contributory negligence, as the term is used in the main charge and in all special charges herein given you, means such act or omission on the part of plaintiff amounting to the want of ordinary care, concurring or co-operating with a negligent act of the defendant, as is the proximate cause or occasions the injury complained of. Now, if you believe from the evidence that plaintiff was injured at the time and in the manner complained of by him, and that an ordinarily prudent person would not have attempted to board said train at the time and in the manner plaintiff boarded said train, then such acts of the plaintiff would be negligent, and that if said acts of plaintiff upon the part of plaintiff, concurring or co-operating with any negligent act of the defendant, was the direct and producing cause of plaintiff's injury, if any, then you will find in favor of the defendant."

Sixth Special Charge: "If you find from the evidence that the defendant was guilty of negligence in the operation of its train at the time and in the manner alleged in plaintiff's petition, and further find that plaintiff himself was guilty of contributory negligence in attempting to board said train at said time, then you are instructed that plaintiff's contributory negligence would not bar a recovery herein, but the amount of plaintiff's damages, if any, should be reduced in proportion that his negligence bears to the negligence of the defendant."

Fifth. The employer's liability act of this state, after creating the liability of the common carrier to the injured employé on account of its negligence in the operation of its trains, and after defining vice principals. fellow servants, and declaring void a certain character of contract between employer and employé limiting the liability of the former, further provides that "nothing in the preceding articles of this chapter shall be held to impair or diminish the defense of contribu-

tory negligence when the injury of the servant or employé is caused proximately by his own contributory negligence, except as otherwise provided;" and it is otherwise provided, "that the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributed to such employé," omitting the remaining portion of the article inapplicable here. Articles 6644 and 6649, now Revised Civil Statutes, pp. 1417–1419. This statute announces the rule that, where the employé is guilty of contributory negligence, it will not bar a recovery, but that the damages shall be diminished in proportion to the negligence attributable to him, necessarily implying cases where the employé's contributory negligence concurs with the negligence of the employer in producing the injury; otherwise there could not be any rule of proportion for the purpose of diminishing the damages of the plaintiff. The fifth special charge, given by the court, in submitting contributory negligence as a bar to the action, blending it with the concurrent negligence of the defendant as a producing cause of plaintiff's injury, was necessarily error; for the statute, in effect, says that when the injury of the "servant is caused approximately by his own contributory negligence" it is not a bar to his action when concurring with the negligence of the defendant. As Chief Justice James (Railway Co. v. Grenig, 142 S. W. 138) expressed it in a case where a special charge was refused by the trial court, which was, in effect, to return a verdict for defendant if contributory negligence was found: "This ignored the statute referred to. The court was not required to treat said charge as a request for a correct charge on the subject, because none could be given, in view of said statute, that would bar a recovery on account of contributory negligence."

[4] This fifth special charge, requested by appellee and submitted by the court, we do not think was corrected by the sixth special charge, also requested by the railway company and given by the court, although the latter charge was a correct charge, and was approved by the Court of Civil Appeals in the Grenig Case, and writ of error denied by the Supreme Court.

The two charges exhibited by this record, as given by the court, are wholly irreconcilable. Of course, the record does not afford a suggestion as to what phase of the evidence controlled the jury when they rendered the general verdict, and the means of exploration are rather elusive in any record in determining whether the charge was one which "amounted to such a denial of the rights of the appellant" as probably caused the rendition of an improper judgment; but the fact remains that the verdict in this case was one in accordance with an erroneous charge on the issue involved condemned by the statute:

and in view of that we are unable to say that the sixth special charge, which was a correct presentation of the issue of comparative negligence, amended and corrected the erroneous instruction, where there is no intimation of a correction in the better charge, and no direct reference to the erroneous charge as a suggestion to the jury that the latter, and not the former, should prevail as the law. As Justice Gaines expressed it in the leading case of Baker v. Ashe, 80 Tex. 361, 16 S. W. 37, on this subject: "How are the jury to reconcile contradictory charges? They are calculated at least to confuse; but perhaps the most serious objection to them is that they leave the jury free to follow either of the contradictory charges as their personal wishes or private feelings may dictate."

Sixth. The appellant assails the correctness of the fourth paragraph of the court's main charge on account of the element of contributory negligence having been blended in said charge with the elements of plaintiff's right of recovery. Under the statutes discussed above, if the defendant is guilty of negligence as the proximate cause of the injury, and the plaintiff is not guilty of contributory negligence, the plaintiff should recover all damages resultant from the injury; otherwise, if guilty of contributory negligence, and the defendant is guilty of concurrent negligence producing the injury, the damages are reduced proportionately to the negligence attributable to the plaintiff, and this paragraph of the court's main charge, in submitting the elements of plaintiff's, right of recovery, is incorrect to the extent of conditioning his recovery upon a lack of contributory negligence.

The assignments of appellant, challenging the correctness of the fourth paragraph of the main charge and the submission of the fifth special charge by the trial court, are hereby sustained. All others are overruled. The opinion on the original hearing of this case is withdrawn, and the order of this court affirming the judgment of the lower court is set aside. The motion of the appellant for rehearing is granted, and the judgment of the lower court is reversed and remanded; and it is so ordered.