EMDE et ux. v. JOHNSON et al.   (No. 9178.)

(Court of Civil Appeals of Texas. Ft. Worth. May 17, 1919. Rehearing Denied June 21, 1919.)

1. MINES AND MINERALS ⬦⟜58 — OPTION — CONSIDERATION—SUFFICIENCY.

The nominal consideration of "one dollar" is sufficient to sustain an option in a gas lease.

2. MINES AND MINERALS ⬦⟜78(7)—OIL LEASES—INJUNCTION.

In applications by lessors of oil leases for injunction restraining lessees from drilling oil wells, the trial court should be actuated by the broad spirit of progressiveness and development, and no unnecessary impediment or delay in the development of the natural resources of the country should be allowed to intervene if the rights of the litigants can otherwise be preserved.

3. MINES AND MINERALS ⬦⟜78(7)—OIL LEASES—EVIDENCE—INJUNCTION.

In a suit to enjoin lessee under an oil lease from drilling a well, as having forfeited his right to sink a well in a given time on lessor's land "or on one of the adjoining surveys," evidence relating to whether a well had actually been drilled on an original adjoining survey held insufficient to show that it had not, so as to justify issuance of an injunction.

4. INJUNCTION ⬦⟜118(1)—PLEADING—SUFFICIENCY.

In a petition for injunction, the averment of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by F. W. Emde and wife against B. J. Johnson and others to cancel a lease and for an injunction. Judgment for defendants, and plaintiffs appeal. Affirmed.

McCart, Curtis & McCart, of Ft. Worth, for appellants.

J. B. McEntire, of Gorman, Earl Conner, of Eastland, R. A. Hefner, of Ardmore, Okl., and John D. McRae, of Waxahachie, for appellees.

BUCK, J. This suit was instituted originally by F. W. Emde and wife against B. J. Johnson et al., for the purpose of canceling a lease contract entered into by and between plaintiffs and defendants, and upon the death of F. W. Emde it was further prosecuted by Mrs. Emde individually and in her capacity as survivor of the community estate. Plaintiff below alleged a number of grounds for cancellation of the lease, but only two are seriously urged in this court. Appellant insists that the lease is null and void for unilateralness and lack of mutuality, and further contends that the lessees forfeited any right or interest they might have had in the land or the minerals thereunder by failure to notify the lessors in writing, prior to the expiration of one year after the execution of the lease contract, that said lessees desired to extend or continue said lease contract. So much of the lease contract between F. W. Emde and wife, Mollie Emde, lessors, and B. J. Johnson, B. H. Turner, and J. W. Carruth, lessees, as is deemed necessary for the discussion in this opinion is hereinafter set out, to wit:

"(1) That the lessor for and in consideration of the sum of one dollar, to us in hand paid,

receipt of which is hereby acknowledged, ——— hereby demise, lease and grant unto said lessee, his heirs and assigns, all of the oil, gas and other minerals in and under the following described tract of land and the exclusive right to prospect and operate thereon for oil, gas and other minerals, together with the right of way, right to lay pipe line over, to use water, gas and oil to operate said property, taken from said premises, to erect derricks, to build tanks and to place all necessary machinery or structures on said premises and to remove all property at any time that may be placed on said land during the term of this lease.

"(2) * * * To have and to hold same unto the said lessee, his heirs and assigns, for a term or period of ten years from the date hereof, and as much longer thereafter as oil, gas or other minerals are produced in paying quantities thereon, or until said lessee is satisfied that oil, gas or other minerals in paying quantities cannot be found or produced from said premises.

"(3) Said lessee hereby agrees to commence operations within one year from date hereof, and the said well to be located on the said tract of land or on one of the original adjoining surveys, the location of said well to be determined by an expert, said location and beginning operations on the said location shall constitute a commencement as mentioned in this contract.

"(4) If the lessee fails to commence operations within the specified time, this lease shall become null and void, unless the said lessee shall give written notice to the lessor of his intention to keep alive this contract, and shall pay said lessor for such extension of time the sum of fifty dollars per year, said payments to be made to the lessor or deposited to his credit in the First National Bank of Gorman, Texas.

"(5) * * *

"(6) It is hereby agreed that the said lessee shall have the right to terminate this contract at any time after being satisfied that oil or other minerals cannot be produced in paying quantities, by giving ten days' notice in writing, and lessee is hereby authorized to sell, sublet or assign the whole or any fractional part of this lease at any time during the term of this lease. This lease is for the purposes and of property above described."

Plaintiff sought, not only a cancellation of the lease, but a temporary writ of injunction restraining the defendants from entering upon the land and drilling thereon, and from a judgment denying the application plaintiff has appealed.

It is admitted that the one dollar consideration mentioned in the lease contract was paid, though Mrs. Emde testified that she knew nothing about any dollar being due until after the extension of the lease, when one of the lessees then paid it to Mr. Emde. It is further in evidence that within the year after the execution of the lease no well was drilled or begun on the Emde land, or on any land adjoining it, though a well was started within said time on a tract of land owned by one of the defendants, J. W.

Carruth, and the lease belonged to the company organized by these defendants under the name of the Hog Creek Oil Company. The land of lessors is out of the Juana Salinas survey, while the Carruth land is out of the Funderburk survey. It is not shown whether these two surveys were "original adjoining surveys" or not, though Mrs. Emde testified that the Carruth land was not an "adjoining survey." As we understand, said statement simply meant that the Carruth land, where the well was being drilled, did not touch the Emde 100 acres. The well on the Carruth land was started a month or two after the Hog Creek Company was formed. This company was organized in September, after the lease to the Emde land was secured in July, though the declaration of trust entered into by the members of the company was dated October 24, 1918. On July 1, 1918, there was deposited by the Hog Creek Oil Company in the First National Bank at Gorman for the benefit of F. W. Emde the sum of $50. This deposit was made by T. M. Dees, president of the oil company, and apparently his check for a larger amount was sent to the Gorman Bank to cover several leases, one of them being the lease on the Emde land, or several checks were sent to cover the rental on different leases. The evidence as to this matter is not very clear. The bank immediately made out a deposit slip showing that a deposit had been made in favor of F. W. Emde to cover "Hog Creek rental" to the amount of $50. The president of the bank testified that he knew that this slip was made out, put into an envelope, and addressed to Emde, and that, while he did not mail it himself, he was sure it was mailed.

At the time the contract was made the Emdes were living on their farm, which was located on a rural route out of Gorman, but at the time the deposit was made they were living at Desdemona. On August 6, 1918, the bank sent to F. W. Emde a statement of his account with the bank, which showed a balance to his credit of $50. This letter finally reached the plaintiff, some one having marked out the name Gorman on the envelope and written the name Desdemona. Mrs. Emde testified that while her husband was sick she received and opened all his mail, and that she knew no notice was received from the bank or other person that the deposit of $50 had been made by the oil company or any one else, and that she had never been notified that the lessees desired to continue their lease contract.

[1] As to what shall constitute a sufficient consideration, valuable in law, to support an option, the authorities are not in harmony, but there is eminent authority to support the contention that the nominal consideration of "one dollar" is sufficient to sustain a contract. Davis v. Wells Fargo & Co.,

104 U. S. 159, 26 L. Ed. 686; 1 Elliott on Contracts, §§ 209, 210; 9 Cyc. p. 365, § E. Of course the consideration may be so grossly inadequate as to raise a presumption of fraud, but it is the fraud and not the mere inadequacy of the consideration that invalidates the contract.

It is said in 6 Ruling Case Law, p. 686:

"As a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutuality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision. Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears, therefore, to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, the mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential. If mutuality, in a broad sense, were held to be an essential element in every valid contract, to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract, or a contract evidenced by a subscription paper, or a contract to enforce a reward offer, or a guaranty, or in many other instances readily put in ordinary business affairs."

[2] In the absence of circumstances showing fraud or violation of trust, confidence, or dependence, equity courts do not ordinarily concern themselves with the adequacy of the consideration. Pittsburg, etc., Brick Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; 6 R. C. L. 679. There is no circumstance disclosed in the evidence tending to show fraud on the part of the lessees, and we are not prepared to say that the trial court erred in refusing to grant the injunctive relief prayed for on the ground that the contract in question at its inception was null and void for insufficient consideration. The determination of complicated questions of law or of fact may properly be left to a final hearing on the merits, rather than to accord to the plaintiff the benefit of the harsh remedy of injunction. In denying the temporary writ of injunction, the trial court did not purport to decide the case on its merits, either as to questions of law or of fact, but merely refused to restrain the lessees from drilling or developing the leased lands for oil and gas. The interests of the litigants were within the power of the court to protect, and if, before final adjudication oil or gas should be produced, the court has it within its power to largely preserve the estate from waste or loss, by receivership or other proceedings, until the rightful ownership shall be determined. In refusing the injunctive writ, both as to questions of law involving the validity of the lease contract and as to questions of fact, some of which will hereinafter be discussed, we are not prepared to say that the trial court was not actuated by the sound judgment and broad spirit of progressiveness and development which should control the courts in cases of this kind. No unnecessary impediment or delay in the development of the natural resources of the country should be allowed to intervene if the rights of the litigants can otherwise be preserved. As far as it is possible the development should be encouraged to proceed, and not to be abated merely by reason of conflicting claims of litigants. Hence we overrule those assignments directed to the failure of the court to grant injunctive relief on the ground that the lease contract introduced in evidence shows on its face, or from other evidence introduced, to be null and void for unilateralness or inadequacy of consideration.

It will be remembered that section 4 of the contract provides that the lease shall become null and void unless the lessees shall give written notice to the lessors of their intention to keep alive the contract, and shall pay said lessors for such extension the sum of $50 per year. It is shown that within the first year there was deposited the sum of $50 in the First National Bank of Gorman, the selected depository. If the money had been paid directly to the lessors before the expiration of the first rental period, and the lessors, with knowledge of the purpose for which said payment was made, had retained the same, probably, upon appropriate pleadings by defendant, the plaintiff might be held to have waived the written notice. While the bank was authorized to receive the money, it does not appear that it was authorized to receive the written notice or to transmit the same to the lessors, and the deposit of the money in the bank could not reasonably be held to be a compliance with, or to justify a noncompliance with, the contractual requirement that written notice should be given the lessors of the intention of the lessees to keep alive the contract. We think the evidence is sufficient to sustain the conclusion of the trial court that the following facts were established, or at least that the plaintiff did not establish the nonexistence of such facts, to wit:

(1) That immediately upon the deposit of the rental for the second year, said deposit being made by the Hog Creek Oil Company, the bank notified in writing the lessors of such deposit.

(2) That, owing to the fact that the evidence shows that the son of plaintiff, and probably F. W. Emde himself, worked for the Hog Creek Oil Company during the first year of the lease contract, while drilling was being done on the Carruth land, plaintiffs

had notice of the fact that the Hog Creek Oil Company had taken over the leases obtained by appellee and were proceeding to develop the holdings for oil and gas.

(3) We are of the opinion that the court was justified in finding that the lessors received the notice from the bank of the fact that the second year's rental had been deposited, and that said notice was received prior to the expiration of the first year. That with such knowledge lessors allowed the deposit of $50 to remain in the chosen depository for more than three months, or until October 4, 1918, when suit was filed by the lessors to cancel the lease contract, and even at that time no tender was made of said rental theretofore paid, nor was any tender ever made up to or during the hearing in the trial court on, to wit, March 21, 1919.

[3] (4) That the applicants for the writ failed to show that in sinking the well on the Carruth tract the lessees did not comply with that part of the lease contract contained in paragraph 3 thereof, which provided that in one year from the date of the lease the lessees shall commence operations and begin to sink a well, to be located either on lessors' land "or on one of the original adjoining surveys." While, as before stated, testimony of Mrs. Emde was to the effect that the Carruth tract does not adjoin her land, yet the evidence is silent as to whether these two tracts are respective portions of "original adjoining surveys." In other words, from the record we are unable to determine whether or not the Funderburk survey and the Salinas survey are adjoining. If these surveys are adjoining, the lessees relieved themselves of the further duty of paying rental, since the evidence shows that within the first year the lessees began operations on the Carruth tract, out of the Funderburk survey.

[4] In a petition for injunction, the averments of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief. Gillis v. Rosenheimer, 64 Tex. 246; Birchfield v. Bourland, 187 S. W. 422. The petition in the instant case did contain the allegations that the lessees had agreed to commence operations within one year from the date of the lease by drilling a well on one of the original adjoining surveys, and the further allegation "that said lessees have wholly failed to begin operations and the commencement of said well within one year." But the evidence, as before noted, fails to affirmatively show that the survey on which the well was drilled and the Salinas survey were not original adjoining surveys.

In view of the state of the evidence we have concluded that the trial court was justified in finding that the lessees were not mere trespassers upon plaintiffs' land, but that they were in good faith insisting on the right to hold under their lease contract and to develop the land for oil and gas. In denying the writ the trial court did not assume to decide the case upon its merits, not to pass finally upon the conflicting claims of the litigants, nor does this court feel called upon to do so. But we have concluded that we are not justified in disturbing the judgment rendered below. In reaching such conclusion we do not wish to be understood as holding that the stipulation in the contract which provided for written notice on the part of the lessees to the lessors' intention and desire to keep alive the lease contract was an immaterial part of the contract, nor that the lessors did not have the right to cancel the contract upon the failure of the lessees to give such notice in the required time. The contract was for a period of ten years, but subject to be determined upon the happening or nonhappening of certain contingencies. One of the prescribed conditions was that the lessees, in order to continue the contract in force, should within the first year give written notice to the lessors of their intention to keep the contract alive. Whether this condition be a condition precedent or a condition subsequent is a question which is not necessary for us to decide at this time, but it is sufficient to say that as between the two the law favors the latter. 8 R. C. L. § 156, p. 1098, under general title of "Deeds." If the contract in question be construed as a conveyance of an estate in lands for a period of ten years, subject to forfeiture upon the failure of the lessees to perform certain conditions, one of which is the notice to lessors of the lessees' intention to keep alive the lease, such condition might be waived by the party not in default; but whether in this case it was waived is a question to be determined by the trial court when the case is tried on its merits.

We conclude that under the facts disclosed we are not justified in holding that the trial court erred in denying the injunctive relief, by which action the court in effect found that it is not at all certain that on a hearing on the merits the defendants may not be able to sustain their defense to plaintiffs' suit to cancel the lease. This we believe to be the rule which should control in cases of this kind. T. P. C. & O. Co. et al. v. Howard, No. 9161, 212 S. W. 735, recently decided, by this court, not yet officially published.

Judgment affirmed.