**McKAY v. TALLY et ux.   (No. 1615.)**

(Court of Civil Appeals of Texas.   Amarillo. March 3, 1920.)

**1. Mines and minerals ☞53, 57—Option to lease or buy land valid, if supported by valuable consideration.**

A valuable consideration will support an option to buy or lease oil lands.

**2. Mines and minerals ☞57—One dollar a sufficient consideration for oil lease.**

Parties competent and able to agree, and who have agreed upon $1 as a consideration for an option lease on oil lands, should be held to their agreement, in absence of fraud or some other fact rendering the contract inequitable.

**3. Contracts ☞56—Recitation of consideration not paid creates obligation to pay, affording consideration.**

Recitation in a contract that $1 was paid as a consideration creates an obligation to pay, if in fact it was not actually paid, and such obligation may be enforced, and will support a contract.

**4. Evidence ☞432—Parties may prove that consideration recited was not paid.**

Ordinarily the recital of a consideration in a deed precludes the grantor from disputing generally the facts of consideration; but, where a deed recites a consideration paid in full, it may be shown between the parties and those having notice that such consideration was in fact not paid.

**5. Mines and minerals ☞57—Acceptance of extension rental eliminated question of want of consideration.**

Assuming that $1 received as consideration for an option to lease oil lands was not sufficient consideration, the question of want of consideration was eliminated by the payment of a rental for the extension of the option.

**6. Mines and minerals ☞79(4)—Bank where rentals were to be paid was agent of lessor.**

A provision in an oil lease providing that the lessee could extend the time for drilling a well, by paying to the lessor or depositing to his credit in a certain bank a certain sum of money, made the bank the agent of the lessor, and payment to the bank had the same effect as payment to the lessor.

**7. Mines and minerals ☞75—Oil lease held a continuing offer by lessor of extension of time to begin operation.**

An oil lease or option, providing that the lessee could extend the time for drilling by the payment of a certain amount at the beginning of each year, was a continuing offer by the lessor to extend the time, and after acceptance of such amount it became a binding and valid contract for the period of extension.

**8. Mines and minerals ☞75—Lessor cannot revoke offer of extension after acceptance.**

If a lessor under an oil lease has the right to withdraw his offer to extend the time for drilling a well, he must give some notice of his intention to withdraw the offer before acceptance, and such revocation of the offer must be communicated to the lessee.

**9. Mines and minerals ☞75—Notice to bank of intention to revoke offer to extend lease ineffective.**

Under oil lease providing that rentals for extensions should be paid to the lessor, or deposited to his credit in a certain bank, notice by the lessor to the bank of his intention to revoke the offer of an extension was ineffective, where not communicated to the lessee; the bank being the agent of the lessor.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Clay County; Wm. N. Bonner, Judge.

Suit by W. T. Tally and wife against L. McKay. Judgment for plaintiffs and defendant appeals. Reversed and rendered.

Wood & Wood, of Dallas, and Stine & Stine, of Henrietta, for appellant.

Taylor, Allen & Taylor, Wantland & Dickey, and L. W. Parrish, all of Henrietta, for appellees.

HUFF, C. J. The appellees, Tally and wife, sued appellant, McKay, to cancel an oil lease on 590 acres of land in Clay county, upon the alleged ground that there was no consideration therefor, and because the same was void, in that it was an option or unilateral contract, and because the lessee, or his assigns, had done nothing towards beginning operations under the lease. The lease is to R. L. Schmidt, dated December 18, 1917, and was acknowledged on the same day by Tally and wife, and filed for record on that day. McKay appears to be the assignee of the lease from Schmidt. The lease in effect stipulates that Tally and wife—

"have and by these presents do hereby demise, let, and lease unto R. L. Schmidt, hereinafter styled lessee, his successors and assigns, for the purpose of exploiting the same for and the production of minerals therefrom, and to that end also grant the exclusive right of drilling and operating thereon for oil or gas and other minerals," with the right of way to lay pipe lines to carry water, oil, etc., and the right to take oil, etc., from the premises, and to drill or operate any wells the lessee may bore, so as to make merchantable any such minerals, etc. "The said premises to which this instrument apply are situated in Clay county," describing the property. "To have and to hold unto the said lessee, his successors and assigns, for the term under the provisions following: (1) There is hereby expressly granted to said lessee the right, at any time before the expiration of twelve months from January 1, 1918, to begin operations or drilling a well for oil or gas on said premises, and also the right to extension of time in which to begin such operations for successive periods of twelve months, on condition that the said lessee shall on or before the first day of each respective twelve months period, pay to W. T. Tally, or deposit to his credit in the W. B. Worsham Company Bank of Henrietta, the sum of $118.00: Provided that, if such payment shall not be made on or before the first day of each such respective twelve months period, then on such default this lease shall wholly determine; and provided, further, that these successive periods in which the right may be acquired to begin the operation of drilling a well in search of oil or gas shall not exceed in the aggregate five years from January 1, 1918, and if such operations shall not be begun on or before the expiration of said two years from January 1, 1918, then this lease shall wholly determine." It is stipulated, when drilling is mentioned · on said leased land, it shall be construed to mean either thereon or within two miles thereof. If the lessee avails himself of the right granted, and begins operation of drilling on the premises, then after the beginning the lessee is not required to make any further money payment, provided, if he fail to prosecute such operations with reasonable diligence, the lease becomes of no effect. If drilling within the fixed period of 12 months from January 1, 1918, or within any extension period for which he may have paid, the lessee shall have the right to make as many attempts to find oil or gas as he pleases, even beyond the five years, provided only such attempts shall be successive, and not more than 60 days shall lapse between the cessation or abandonment of work on one well and beginning of work on another. "If, in the exercise of the right hereto conferred, oil or gas be found in paying quantities on said land, then the lessee shall deliver as royalty to said W. T. Tally, free of expense, one-eighth part of the oil saved," etc. It is stipulated in other clauses the discovery of minerals shall at once vest the lessee with the exclusive right to produce the same as long as in paying quantities, if such products are found, and if the lessee, his successors or assigns, should conclude no longer to operate, the right is conferred to surrender upon the payment of $100 to the lessor, covering the privilege of removing all materials placed thereon by the lessee or his assigns. "It is further agreed all the conditions and terms herein shall extend 'to the heirs, executors, legal representatives, successors and assigns of the parties hereto. On the 18th day of December, 1917, paid to the said W. T. Tally the sum of $1 the receipt whereof is hereby acknowledged, and which payment is received in full satisfaction of any and every right hereby granted, including the right to extend the privilege of exploration of said land."

The facts show, and the trial court found, the $1 consideration recited was not actually paid. The facts show that Tally went to W. B. Worsham Bank some time prior to January 1, 1919, and notified the cashier of the bank not to receive any rental money on the lease, saying he was not going to accept unless he had to do so. This notification was given to the cashier, Mr. Caldwell. It is not shown that other officers of the bank were so notified. The cashier and appellee appear to have been looking for the payment to be made through the mail, but on the 28th day of December, 1918, the appellant went into the bank, and at that time the cashier was out, and deposited to Tally's credit the rental, stipulated for in the contract, of $118. The officer of the bank receiving the money gave a certificate of deposit, showing that the deposit was made on that day in the name of W. H. Tally, and made by McKay. About January 24, 1919, Tally checked back the money in the bank to McKay's credit. The statement of facts shows the parties entered the following:

"It is agreed by and between the parties to this cause that no drilling was ever done on the land of the plaintiffs or within two miles of the same within the twelve months' period provided for in the contract, nor up to the present time."

There is nothing to show that Tally ever notified McKay or Schmidt that he would not accept the rental before it was paid, and nothing to show that McKay accepted money checked back, or that it was ever paid to him.

[1-4] It is perhaps unnecessary to discuss in this case whether the $1 recited is such consideration as will support the contract; but, as there are several other cases submitted with this one, which require determination, we have concluded to give our views in this case. It is established in this state beyond controversy, we think, that a valuable consideration will support an option to buy or lease land. Oil Co. v. Teel, 95 Tex. 586, 68 S. W. 979; Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334. Assuming, for the purposes of considering this question, that the contract is a mere option, which is, to say the least, extremely doubtful, we shall consider whether there was a consideration by the payment of $1. We think the use of the term "nominal" is frequently carelessly made. In using it, if we mean it is a consideration in name only, we may mean no consideration was agreed upon or paid. If we mean inconsiderable only, it would then be used as a relative term. If it is inconsiderable, it is so because, as compared with the value of the thing paid for, it represents only a trifling proportion thereof. As an example: If a man should give an option for twelve months in consideration of $100 on five acres of land in a proven field, with wells on adjacent land, producing 2,000 or 4,000 barrels per day, this consideration would doubtless be regarded as grossly inadequate; but it can hardly be asserted that such $100 is not valuable. In comparison it may be of no more value than $1 for an option on 500 acres in a wild-cat territory, 100 miles from a proven field. It seems to us parties competent and able to agree, and who have agreed upon $1 as a consideration, should be held to their agreement, in the absence of fraud or some other fact rendering the contract inequitable. Courts ought not to arbitrarily fix the consideration of contracts for parties. The parties may understand that one is selling and the other is buying an option on "blue sky." If the consideration is inadequate, it has been said by our courts many times this alone will not render the contract void. As we conceive it, some fact should be alleged and proven to show the consideration is inadequate, together with such other facts as would render it inequitable to permit the agreement to stand. If the court shall undertake arbitrarily to say what the consideration shall be, at what amount will they fix it? What rule will they promulgate to ascertain it? The matrix for the court's judgment must be found in the allegation and proof of inadequacy and the circumstances rendering the enforcement of the contract inequitable.

There are some cases which apparently hold that an inconsiderable sum will not support a contract; but we think in the great majority it will be found that under proper allegations it is presented as a fact, and the equity powers of the court are invoked upon proper pleadings and proof. In one of our earlier decisions the question is presented in as strong language with reference to inadequacy as our courts have ever used. It is there said:

"Thus, though mere inequality in a bargain, or inadequacy of consideration, would not of itself, unattended with fraud, afford a distinct ground for annulling the contract."

After quoting from Story's Equity, § 246, the court further said:

"Thus it is seen that courts of equity recognize the doctrine that there may be such unconscionableness and inadequacy in the bargain as to amount, in itself, to decisive evidence of fraud; and though mere inadequacy of price, per se, is not, yet fraud is, sufficient and satisfactory ground of relief against a contract." Burch v. Smith, 15 Tex. 224, 65 Am. Dec. 154.

In the case of Quebie v. Railway Co., 98 Tex. 6, 81 S. W. 20, there was a contract of release of damages for personal injury, on a recited consideration of one dollar and the promise of one day's work. The Supreme Court said:

"The consideration was a valuable and a legal one, though small."

The Court of Civil Appeals reached the same conclusion in that case. 77 S. W. 442. Judge Williams said substantially in that case the cases cited against the validity of the contract were cases which attacked the contract on the ground of mistake or fraud, and the expressions of the opinions must be understood as so applying when such is the question, "and not when the interpretation or construction of the language alone is under consideration. * * * The two questions are not always kept distinct in the discussion of such cases as they must be kept here." This court has followed the Quebie Case on this point. Gregory v. Railway Co., 155 S. W. 648; Railway Co. v. Fitts, 188 S. W. 528. In the latter case, however, writ of error was granted, upon what ground we are not informed. It has been held by a number of cases that $1 recited consideration is sufficient, and the contract is not void because inadequate on that ground alone, and in a case handed down by this court, not yet published, Nolan v. Young, 220 S. W. 154, we reach the conclusion that our Supreme Court favored such holding. 13 C. J. § 237, "Contracts," p. 365; Ernde v. Johnson, 214 S. W. 575; Oil Co. v. Teel, 95 Tex. 591, 68 S. W. 979; Pierce, etc., v. Woodrum, 188 S. W. 245; Shaffer v. Marx, (D. C.) 241 Fed. 139; Lindlay v. Raydure (D. C.) 239 Fed. 928. The question is also presented by this record that

the recitation that $1 was paid as a consideration creates an obligation to pay, if in fact it was not actually paid. It seems, under some of the authorities, such would be an obligation to pay, which may be enforced and will support a contract to lease or convey an interest in land.

"Where a contract recites the payment of $1 as its consideration, it is valid, although the sum named is not actually paid, since it creates an obligation to pay such sum, which may be enforced by the other party." 13 C. J. § 240, "Contracts," p. 367.

In the note to the above, Tinsley v. Etowah (D. C.) 197 Fed. 602, and Southern Bell Telephone Co. v. Harris, 117 Ga. 1001, 44 S. E. 885, are cited. This court took substantially the same view in Railway Co. v. Fitts, 188 S. W. at page 533. It seems to us, if by agreement the lessor agreed to take and the lessee to pay $1 as a consideration for the lease, such agreement would support the contract, and if not actually paid the obligation could be enforced, rendering it a valid and legal consideration. If, however, there was no such agreement, and the recital was made simply to conform to a belief that a written contract must name some sum, it may be regarded as a consideration in name only, and in that sense nominal, and not upon agreement. Ordinarily the recital of a consideration in a deed precludes the grantor from disputing generally the fact of consideration. Railway Co. v. Pfeuffer, 56 Tex. 66. It has also been said that evidence as to the consideration is not to be used to defeat a deed as a conveyance. Paris v. Burks, 101 Tex. 106, 105 S. W. 174. However, we believe, though a deed recites a consideration paid in full, it may be shown, as between the parties and those having notice that such consideration was in fact not paid. Masterson v. Burnett, 27 Tex. Civ. App. 370, 66 S. W. 90. The allegation in the petition herein, attacking the instrument on the ground that the recited consideration of $1 was not in fact paid, perhaps was sufficient to permit the lessor to show there was no agreement for such consideration and it was not paid. The facts in this case authorized the trial court in the finding that there was no such agreement, and that the $1 was not paid, but that in fact $1 was not a consideration, and that the recital was merely a consideration in name.

[5-9] We may treat this instrument as an option, but this will not necessarily render the contract unilateral and void. As above stated, a consideration paid for an option renders the contract enforceable. An option supported by a consideration is valid, notwithstanding the lack of mutuality. It is no objection to the validity of the contract that the holder of the option is under no obligation to exercise it. Pittsburg, etc., v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745.

This is illustrated where the privilege is given a lessee to purchase the premises in case the lessor makes a sale. Such stipulation is not invalid on the ground that it is wanting in mutuality, since the privilege is part of the consideration for accepting the lease. Hays v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555. Wilkinson & Richardson, in their work on Law of Oil and Natural Gas, p. 120, we think clearly state the rule:

"But, if an independent, valuable consideration, sufficient to support the contract, has been paid, the fact that further undertakings by the purchaser were not absolute, but merely things which were to be done at his option, would not render the contract void as being an option or a unilateral contract, without consideration. If the matters left optional with him were conditions to his acquiring or retaining the rights granted, either expressly or by implication, he might forfeit his right by a failure to perform; but the question becomes then one of forfeiture of a conditional grant rather than the validity of an optional or unilateral contract." Aycock v. Reliance Oil Co., 210 S. W. 848; Pierce, etc., v. Woodrum, 188 S. W. 245; McEntire v. Thompson, 210 S. W. 563.

We have in manuscript, the opinion in the case of Hunter v. Gulf Refining Co., 220 S. W. 163, by the Court of Civil Appeals, Second District, substantially to the same effect, and as bearing on the question we cite the Daugherty Case, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. If the payment of the rental was made before the time agreed upon, the lessor would not have the right to cancel. By his contract the lessor has obligated himself to accept such payment as a condition for the extension of the option, if made within the prescribed time. The lessee accepted the terms of the contract when he made the payments, as such payments eliminated the question of consideration in the first instance. Stanley v. Sumrell, 163 S. W. 697; Texas Seed, etc., v. C., S. & S. Co., 187 S. W. 747; Hall v. Willmering, 209 S. W. 226; 13 C. J. "Contracts," §§ 182, 183. We think under the contract the Worsham Banking Company was the agent of the lessor, and when appellant deposited $118 to the credit of appellee, as stipulated in the contract, he had 12 months longer to begin operations. Texas Co. v. Wimberly, 213 S. W. 286; Beatty Oil Co. & Gas Co. v. Blanton (D. C.) 245 Fed. 979; Thornton, Oil & Gas, vol. 2, § 914; also the case of Hunter v. Gulf Refining Co., supra, and also by the same court, White v. Dennis, 220 S. W. 161.

The lease in this case was a continuing offer by the lessor, if in 12 months the lessee would begin operations, with also the right to extend the time of beginning operations if the lessee would pay $118 for 12 months longer. After the acceptance of such offer it became a binding and valid contract for

the period of extension. Pittsburg Brick Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745. The contract stipulated how and to whom the rentals should be paid. The acceptance by the lessee was made within the time and in the manner stipulated in the contract, or in the proposal. After such acceptance the lessor could not withdraw his offer. If, under this contract, he had the right to do so before the time given, he must, we think, have given some notice of his intent to withdraw the offer before acceptance. It seems the revocation of an offer is not effectual, unless it is communicated to the person to whom the offer was made. Tayloe v. Merchants' Fire Ins. Co., 9 How. 990, 13 L. Ed. 187; Patrick v. Bowman, 149 U. S. 411, 13 Sup. Ct. 811, 37 L. Ed. 790. In this case, the lessor not having given notice to the lessee of the revocation, or intention to do so, the lessee accepted and paid the rentals, having thereby parted with, and having been induced thereby to pay, the same without notice of such intention. We do not think that the statement made by the lessor to the bank that it was his intention not to carry out the proposal sufficient. In this case he accepted the money through his alter ego, and, after having done so, he cannot rescind by directing such agent to credit the sum so paid to the account of the lessee.

We believe the court was in error in canceling the contract, and the judgment will therefore be reversed, and here rendered for appellant.